RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0265P (6th Cir.)
File Name: 03a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　No. 01-2426

KEVIN PETER OLENDER,
　　　*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80141—Denise Page Hood, District Judge.

Argued: June 19, 2003

Decided and Filed: August 1, 2003

Before: BOGGS and GILMAN, Circuit Judges; DOWD,
Senior District Judge.[*]

---

## COUNSEL

**ARGUED:** Arlene F. Woods, Detroit, Michigan, for Appellant. Daniel L. Lemisch, UNITED STATES

---

[*] The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Arlene F. Woods, Raymond R. Burkett, Detroit, Michigan, for Appellant. Daniel L. Lemisch, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

DOWD, Senior District Judge. Defendant-appellant Kevin Peter Olender (Olender) challenges his conviction and resulting sentence for being a felon in possession of ammunition, as well as the district court's denial of his motion for new trial. We reject Olender's arguments on appeal and affirm for the reasons that follow.

### I.

Olender was employed at Compuware, Inc., a large computer services company located in Farmington Hills, Michigan. He came to the attention of the Farmington Hills Police Department after he allegedly told co-workers that he intended to kill his supervisor and several other workers at Compuware. A search warrant executed on Olender's home resulted in the seizure of considerable ammunition and a kit for the construction of a weapon.[1]

---

[1] The items seized included:

　--Two disassembled FNFAL Steyr assault weapons kits, complete except for a part known as a "receiver."

　--A receipt for one of the FNFAL Steyr assault weapons, which indicated the kit was shipped to Kevin Olender, 2312 23rd Street, Wyandotte, Michigan.

　--938 rounds of 9-mm ammunition.

　--800 rounds of 7.62 ammunition.

Olender was charged in state court as a felon in possession of a weapon, but was acquitted. The federal indictment was first returned on June 14, 2000 on a single count of felon in possession of ammunition in violation of 18 U.S.C. § 922(g) for possessing the 9-mm ammunition. The first superseding indictment was returned on December 21, 2000, inserting the 7.62 ammunition to the existing felon-in-possession charge. On March 1, 2001, a jury convicted Olender on the single-count superseding indictment. On June 27, 2001, Olender filed a motion for new trial under Fed. R. Crim. P. 33, alleging "newly discovered evidence." The motion was denied on August 8, 2001, the same day Olender was sentenced to a prison term of 48 months.

## II.

### A.

Olender's primary challenge on appeal focuses on his status as a convicted felon, i.e., for the state crime of felonious assault. Although the records of the Wayne County Circuit Court indicated that Olender had been convicted of felonious assault for striking his girlfriend on the head with a telephone, requiring that she have stitches, the state court, on Olender's motion filed after his March 1, 2001 conviction in the instant case, determined that Olender's 1996 felonious assault

--12 high-capacity magazines which accommodated 7.62 ammunition.

--One box of 12-gauge shotgun shells.

--48 high-speed "strip clips" for loading 7.62 ammunition, along with bandoliers for carrying the loaded strip clips.

--One FNFAL gunsmithing book, found in the master bedroom of the house, containing instructions on how to assemble the assault weapons kits found in the basement.

conviction had been erroneously entered. Olender characterizes this state-court action as "newly discovered evidence," which he advances as reason to vacate his conviction and sentence and grant him a new trial.

The government, however, argues that Olender *was* a felon on the date he committed the instant offense, a fact which it proved beyond a reasonable doubt. In the government's view, any ruling which Olender managed to obtain in state court subsequent to his commission of, and federal conviction for, the offense of felon in possession of ammunition, is irrelevant. We agree.

The government introduced testimony in its case-in-chief supporting the allegation of Olender's status as a convicted felon after Olender refused to stipulate the fact of his prior felony conviction.[2]

In his defense, Olender's mother indicated the belief that the state crime was a misdemeanor, not a felony.[3]

---

[2] The government, in proving the fact that Olender was a convicted felon, presented the testimony of Olender's state probation officer who testified that Olender was on probation for felonious assault on February 12, 2000, the date of the instant offense. The government also introduced certified copies of Olender's conviction documents which demonstrated that he was convicted of felonious assault in violation of Michigan Comp. Laws § 750.82 on May 31, 1996, and received a sentence of one year in jail followed by five years of probation.

[3] Olender's mother testified as follows on February 27, 2001:

A   A misdemeanor.

Q   You thought it was a misdemeanor?

A   Yes.

Q   Is that what Kevin Olender told you?

A   No one told me anything, I assumed.

Additionally, the defendant called his state court lawyer, Thomas Strauch, who testified that Olender's state crime was changed from a misdemeanor to a felony at the time of sentencing.[4]

---

Q   Okay.  That's just an assumption on your part?

A   Yes.

Q   So, having known that your son in your mind was convicted of a crime, you still had him order this ammunition for your husband?

A   Yes.

Q   Having known your son was convicted of a crime and spent time in jail, you had him order this assault weapons kit; is that what your claim is to this Jury?

A   Yes.

Q   And having known he was convicted to a crime and sent to jail, you had him order all of those parts you just mentioned supposedly?

A   Yes, sir.

Q   Why did you do that, Ma'am?

A   I guess I wasn't thinking.  If I would have known, he wouldn't been in this today for my guilt.  For my problem.

Q   You want to take the blame, don't you, Mrs. Olender?

A   No, I don't.

J.A. at 427.

[4]Strauch's testimony follows:

Q   Okay.  Sir, did there come a time when the guilty plea to aggravated assault changed?

---

A   I believe it did.

Q   And when did that happen, if you recall?

A   I believe it happened at sentencing.

Q   *And at the time of the sentencing when the plea to aggravated assault changed, what was the plea then changed to?*

A   *Felonious assault.*

Q   And if you know, sir, did the trial judge or anyone to your knowledge advise Mr. Olender of any rights or responsibility associated with changing his guilty plea from the misdemeanor aggravated assault to felonious assault?

A   *I do not believe his rights were reenumerated or enumerated at that time.*

Q   Just two last questions, sir.  If you know, why was it that Mr. Olender's guilty plea to aggravated assault change to a guilty plea to felonious assault?

A   The plea agreement was negotiated with assistant Wayne County Prosecuting Attorney Ralph Alesando.  Mr. Alesando's concern was that there be a considerable period of probation, a longer probation than what -- a long term of probation.  The five years probation.

    At the time of taking the plea, Mr. Alesando and I discussed, you know, how, what terms of probation would be available.  The plea was adjusted, modified if you will, at sentencing date so that Mr. Olender could take advantage of the plea agreement of five years -- a long term of probation.

Q   Sir, did anyone advise Mr. Olender that by having his plea changed from aggravated assault to felonious assault that he was now pleading guilty to a felony as opposed to a misdemeanor?

The trial testimony of Olender's state counsel was accurate as fleshed out by the state record of the taking of the guilty plea and the subsequent sentencing. Initially, Olender was charged with two counts in state court, i.e., one count of assault with intent to do great bodily harm and one count of aggravated stalking. On October 6, 1995, by way of a motion to quash, Olender successfully challenged the charge of aggravated stalking. The trial on the remaining count was scheduled for April 8, 1996. During the October 1995 motion hearing, the state prosecutor declared as follows:

> Your Honor, I would indicate that even with the ruling our offer stands as was before that if the Defendant pleads as charged now, that we would agree to five years probation with the first twelve months in Dickerson with some counseling.

J.A. at 573.

On April 5, 1996, Olender appeared in the state court and entered a plea of guilty to aggravated assault during a

---

A   Would you repeat that one for the me, please?

Q   At the time of the sentencing when the plea was changed to felonious assault, are you with me?

A   Yes.

Q   Did anyone advise Mr. Olender, the judge or anyone advise Mr. Olender that by changing the plea from aggravated assault to felonious assault, he was no longer pleading guilty to a misdemeanor but rather to a felony?

A   I'm not sure if anyone advised him of that at that time. Some of the state court work is done in a very rapid fashion in terms of pleas and sentencings on any given morning.

J.A. at 430–31 (emphases added).

proceeding which indicated some confusion as to whether the court could impose probation for a term of five years. Olender then appeared for sentencing on May 31, 1996, and the short sentencing hearing resulted in the offense being increased to felonious assault to accomplish the state's goal of a period of probation for five years.[5]

---

[5]The colloquy at the state sentencing on May 31, 1996, recites as follows:

THE CLERK: File Number 95-08653, People versus Kevin Olender. Mr. Olender pled guilty April 5th, 1996, to Aggravated Assault. He's here for Sentencing.

MR. STRAUCH: Thomas Strauch, on behalf of Mr. Olender.

MR. ELIZONDO: Ralph Elizondo, on behalf of the People.

Your Honor, Mr. Olender had pled guilty to Aggravated Assault. There was a sentence agreement in this case. When we put this agreement together, we indicated that this agreement was valid only if the five years probation was allowable under the statute for aggravated assault.

It's my understanding that it's not. As the result of that, I've had consultation with Counsel, and I believe what we're going to do today is change the plea from Aggravated Assault to Felonious Assault. Therefore, if that is accomplished I believe the sentence agreement would be appropriate for that particular crime.

MR. STRAUCH: *The Defense would stipulate to amending the plea to Felonious Assault and submit that there is sufficient factual basis already taken on the previous plea for the Court to accept that amended plea.*

THE COURT: I agree. As I understand, the Defendant struck the Complainant with a telephone, and the telephone could be considered a dangerous weapon. Injuries were sustained as the result of the attack.

All right. *Mr. Olender, do you understand what we're doing today?*

DEFENDANT OLENDER: *Yes, Your Honor.*

THE COURT: You can't get five years probation for Aggravated Assault, and therefore the Prosecutor has indicated that there will be no reduced plea. *You will be pleading to Felonious Assault, and the sentence would be five years probation.*

*Understanding that, are you in agreement?*

DEFENDANT OLENDER: *Yes, Your Honor. I am.*

THE COURT: Very well. I will accept the statement by the Defendant and the stipulation on this record.

MR. STRAUCH: Thank you, Your Honor.

MR. ELIZONDO: Does the Court wish me to modify the plea agreement that's in the Court record?

THE COURT: Yes.

MR. ELIZONDO: Okay. I'll do that before we leave today then, Judge.

MR. STRAUCH: Aside from that, Your Honor, other than the corrections necessary in the P.S.I., regarding the plea amendment, we've reviewed the other factual contents thereof and did not ask the Court to make any changes to that.

THE COURT: All right.

MR. STRAUCH: We would ask that you adopt the sentence agreement.

THE COURT: All right. Mr. Elizondo, do you wish to say anything regarding sentence?

MR. ELIZONDO: I would just indicate to the Court that the Complainant, Margaret Blum is present in the courtroom today. I spoke with her and informed her of the right to address the Court. She indicated she did not have really anything she wished to address to the Court.

It is quite clear that, at the time of trial, the record proved that Olender was a felon when he possessed the ammunition. Between the time of his federal conviction and the date of sentencing, Olender filed a motion for new trial wherein he argued in part as follows:

On behalf of the People of the State of Michigan, we'd just want to say, Your Honor, that we're in hopes that the types of behavior that led to this particular circumstance are something significant in the mind of Mr. Olender and that he'll take advantage of the time in counseling and take advantage of the time that he'll have over the next year to reflect upon that and hopefully straighten the course out. With that, we would just ask that the Court adopt the sentence agreement as it was put together, Your Honor.

THE COURT: All right. Mr. Olender, you have a right to make a statement to me before I sentence you. Is there anything you want to say?

DEFENDANT OLENDER: No, Your Honor.

THE COURT: All right. *I should indicate -- do you understand that the maximum penalty for Felonious Assault is four years?*

MR. OLENDER: *Yes.*

THE COURT: Because I don't think that has been put on the record.

MR. OLENDER: Yes.

THE COURT: You will be placed on probation for a period of five years, with the first year in the William Dickerson facility, with work release if employment is verified; you will receive batterer's counseling at A.C.T.; you're to have no contact with the Complainant. You will also pay restitution in the amount of $64.00, pay court costs in the amount of $165.00 per year at the rate of $16.50 a month, and you will pay court appointed attorney fees.

J.A. at 583-87 (emphases added).

That on or about June 8, 2001 the Wayne County Prosecutor's Office acknowledged for the first time that it was aware that the Defendant never plead [sic] guilty to Felonious Assault and agreed to correct the conviction to reflect the Defendant's guilty plea to the misdemeanor of Aggravated Assault and Stalking.

That the parties were unaware until Mr. Strauch's testimony that the Defendant had not plead [sic] guilty to felony of Felonious Assault. That the Defendant did not know that everyone had made a mistake nor could he have anticipated that the Wayne County Prosecutor's Office would acknowledge the mistake, given that the Wayne County Prosecutor's Office had previously prosecuted the defendant as a Felon in Possession of a Weapon.

That the interest of justice requires that the Defendant's conviction be set aside based on newly discovered evidence in accordance with Fed. Rule Crim Pro [sic] 33.

J.A. at 147 (internal paragraph numbering omitted).[6]

---

[6] It is unclear what exhibits were submitted in support of the motion, but the Joint Appendix includes a transcript of a hearing on June 6, 2001 before State Judge Deborah Thomas in which the Assistant Prosecuting Attorney for Wayne County appears to support Olender's position that he did not actually plead to the crime of felonious assault. Subsequently, after Judge Thomas entered an Order of Dismissal, which was apparently done without any agreement from the Prosecutor's Office, the Prosecutor's Office submitted an Emergency Petition for Ex Parte Order. Then, Judge Thomas stayed the Order of Dismissal and scheduled a hearing for July 11, 2001. On July 18, 2001, Judge Thomas apparently lifted the stay and published an order which amended the charges to Aggravated Assault and Aggravated Stalking. The action in the Michigan courts continued and, on May 10, 2002, Judge Thomas approved a Second Amended Order to correct the Order of July 18, 2001. The July 18, 2001 order was corrected to read that the charges of Felonious Assault, Assault with Intent to Do Great Bodily Harm Less Than Murder and Aggravated Stalking were thereby amended to the charges of

Olender's motion for a new trial was subject to the provisions of Fed. R. Crim. P. 33 which, on June 27, 2001,[7] provided:

On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require. If trial was by the court without a jury, the court may--on defendant's motion for new trial--vacate the judgment, take additional testimony, and direct the entry of a new judgment. A motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty. But if an appeal is pending, the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

---

Aggravated Assault and Stalking.

[7] After the Federal Rules of Criminal Procedure were re-stylized, Rule 33 was amended to read:

(a) **Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b) **Time to File.**

(1) **Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) **Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period.

The district court announced its denial of the motion for a new trial from the bench on the day of sentencing, August 8, 2001, and indicated that an opinion would be published supporting the denial. In its August 8 oral opinion, the district court found that the motion was not based on "newly discovered evidence."

The government contends, accurately we hold, that the standard of review with respect to a motion for a new trial on the basis of newly discovered evidence should be limited to an abuse of discretion. *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994).[8]

The district court published an opinion on February 26, 2003, and found that the procedural actions of the Wayne

---

[8]The government cites *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988), and *United States v. Hernandez*, 227 F.3d 686, 695 (6th Cir. 2000) (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). All these cases, however, deal with issues relating to manifest weight of the evidence or other errors that arguably required a granting of the motion. None address the issue of newly discovered evidence. However, the decision in *Ashworth* does cite *United States v. Cordle*, 377 F.2d 522, 523 (6th Cir.), *cert denied*, 389 U.S. 961 (1967), as applying the abuse of discretion standard of review for denials of new trial based on newly discovered evidence.

In *Cordle*, *supra*, the court declared:

   It is well settled that the granting or refusing of a new trial upon newly discovered impeaching evidence, including recantation by a witness, rests in the sound discretion of the trial judge and will not be granted unless the "new" evidence probably would bring about a different result. In the absence of a clear showing of an abuse of discretion in determining the probable effect of the newly discovered evidence in changing the result of a trial, the action of the trial judge will not be disturbed on appeal. United States v. Lewis, 338 F.2d 137, 139 (C.A. 6), cert. denied, 380 U.S. 978 . . . and the cases therein cited.

377 F.2d at 523.

---

County Circuit Court did not constitute newly discovered evidence. The opinion states:

   Rule 33 allows for a motion for new trial based on newly discovered evidence if, 1) that evidence was discovered after trial; 2) that it could not have been discovered before trial with due diligence; 3) that the evidence is material to the issues at trial and not merely cumulative or impeaching; and 4) that the evidence would probably lead to a different verdict. See *United States v. Turns*, 198 F.3d 584 (6th Cir. 2000). Motions for new trial based on newly discovered evidence are disfavored, and a trial court's decision not to grant a new trial will be affirmed unless it is a "clear abuse of discretion." *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992).

* * *

   Newly discovered evidence does not include new legal theories or new interpretations of the legal significance of the evidence. See *United States v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991). "Evidence will not be deemed 'newly discovered' simply because it appears in a different light under a new theory. [A] party who desires to present his case under a different theory [i]n which facts available at the original trial now first become important, will not be granted a new trial." *United States v. Hamling*, 525 F.2d 758, 759 (9th Cir. 1975). An attempt to relitigate the case on a new theory is not considered newly discovered evidence but is merely newly discovered issue of law. *United States v. Shelton*, 459 F.2d 1005, 1006-07 (9th Cir. 1972).

   Here Defendant did not stipulate to being a "felon" at trial. The parties presented evidence at trial on the "felon" issue, including the testimony of Defendant's counsel, Thomas Strauch. Any claim that Defendant's felony plea was improper, is not a newly discovered

evidence since Defendant was aware at trial of Mr. Strauch's testimony during the trial. Defense counsel in this case also was aware of the "felon" issue since it had a copy of Defendant's state court plea and sentence transcript prior to trial and referred to the transcripts when Mr. Strauch was questioned by the defense. (Ex. D, pp. 4, 6, 13, 14, Defendant's Brief) Mr. Strauch further testified that he had been in contact with Defendant during Defendant's state court trial on a felon in possession of a firearm charge. (Ex. D, p. 21, Defendant's Brief) Defendant during the state court felon in possession trial held in December 2000 was represented by the same defense counsel as in this case. Any issue regarding Defendant's "felon" status was known by Defendant during the December 2000 state trial and prior to the instant federal trial since defense counsel had possession of Defendant's plea and sentencing transcript. During the trial in this case, there was an issue as to Defendant's status as a "felon" and evidence was presented and testimony was presented on the issue. Defendant cross-examined the witness, Mr. Strauch, on the validity of the underlying felony conviction. The jury based its findings based on the testimony and evidence at trial. The newly-entered Orders do not change the "evidence" relevant to this trial since the issue at trial was whether at the time of the date of the offense, Defendant was a felon. There was sufficient evidence at trial to support the jury's finding that Defendant was a felon at the time of the date of the offense.

R. 107 at 2-4.

Applying the abuse of discretion standard of review, we find no error in the denial of Olender's motion for new trial on the basis that the subsequent action in the Wayne County Circuit Court did not constitute "newly discovered evidence."

The defendant's status on the date of the offense controls whether the felon in possession laws have been violated. *See Lewis v. United States*, 445 U.S. 55 (1980);[9] *United States v. Morgan*, 216 F.3d 557, 562-66 (6th Cir. 2000);[10] and *United States v. Steverson*, 230 F.3d 221, 224-25 (6th Cir. 2000).[11] Clearly, the evidence before the jury, even the testimony of his state counsel, Strauch, demonstrates that Olender was a felon as of the date of the offense. Moreover, the government does not have to prove that the defendant knew he was a felon, only that he knowingly possessed the ammunition. *See United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996) (recognizing that "the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm").[12]

---

[9] In *Lewis*, a conviction for a charge of felon in possession of a firearm was not subject to collateral attack even though the predicate felony could be attacked as uncounseled under *Gideon v. Wainwright*, 372 U.S. 335 (1963).

[10] In *Morgan*, the court followed *Lewis, supra*, and affirmed the conviction for felon in possession even though the defendant had his civil rights restored after the date of the offense, but prior to the trial.

[11] In *Steverson,* the convicted felon in possession argued that his trial lawyer was ineffective because he did not challenge the prior state convictions as invalid under the teachings of *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). The *Steverson* court, citing *Lewis*, rejected that argument. 230 F.3d at 224-25.

[12] *See also*, *United States v. Davis*, 27 Fed.Appx. 592, 2001 WL 1662485, at ** 7 (6th Cir. Dec. 27, 2001) (noting the *Capps* court's further recognition that "no circuit has extended the knowledge component of § 922(g)(1) beyond the act of possession itself") (citing *Capps*, 77 F.3d at 352; *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995); *United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1991); *United States v. McNeal*, 900 F.2d 119, 121 (7th Cir. 1990); *United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir. 1988)).

### B.

Olender also challenges some of the district court's evidentiary rulings. We will address these briefly. The standard of review as to evidentiary issues is abuse of discretion. *United States v. Mick*, 263 F.3d 553 (6th Cir. 2001); *United States v. Mack*, 258 F.3d 548 (6th Cir. 2001).

### 1.

Olender filed a pre-trial motion *in limine* to prevent the government from introducing the rifle kit and the additional ammunition. The government responded that the rifle kit and the ammunition were part of the *res gestae*. The district court denied the motion prior to trial, but without any written opinion supporting the denial. The government had the task of proving a *knowing possession* of the ammunition.

In opposing Olender's pre-trial motion *in limine*, the government advanced a *res gestae* evidence argument. Such evidence consists of those acts or items which are "inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citing 2 Weinstein's Federal Evidence § 404.20[2][c] and [d]). In *Hardy*, the court stated:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

Applying the abuse of discretion standard, we find no error.

### 2.

Olender attempted to introduce the testimony of a person who was identified as a criminologist. The district court considered the issue in the absence of the jury and denied Olender's attempt. The potential witness was prepared to comment adversely on the conduct of the investigation. The potential testimony was examined under the teachings of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as well as the newly-modified Fed. R. Evid. 701, 702, and 703. The court granted the government's motion to exclude the testimony, both as an expert witness and as a lay witness. In denying Olender's attempt to call the witness, the district court stated in part as follows:

> Now, I have read the summary report. It is actually entitled, "Preliminary Review" and it does not, and I don't think I'm revealing anything, but basically indicates, without saying what that opinion will be, a review of the documents and testimony and the taping of some witnesses interviews. And, it appears to the Court that the testimony of the witnesses is permitted in open court to show that the Defendant did not possess ammunition or that [it] was possessed by another or that he was not the only resident of the home; and therefore, did not possess it. And I don't think expert testimony is needed for any of that. Those witnesses are eligible to come in open court and say that they possessed the ammunition or that Mr. Olender, Mr. Kevin Olender, did not possess it. And I don't think we need an expert to say we took these interviews and that's what the investigation would have shown because those witnesses can be called and are the best evidence of that in fact. And so, I don't think an expert opinion is needed in that regard.

. . .

As I indicated, I don't think that there is anything that the expert's going to show that is of a fact nature or of an expertise that is not able to be shown by a lay witness or by cross examination of police witnesses. And therefore, I further find in addition to what I found yesterday that the expert testimony will not assist the trier of fact in pointing out the loop holes in the Government's case in this particular case. Nor can I think the expert be called as a lay witness to give opinion on the police investigation of this offense or to repeat statements given to him in interviews with potential witnesses.

Under Rule 701 as amended December 2000, which has to do with a person giving opinion as a lay witness, the perception of the witnesses is what is the concern, and under the Advisory Committee notes, it indicates that firsthand knowledge or observation is essential and that the testimony must be helpful in gaining a clear understanding of the witness's testimony and a determination of the fact at issue.

J.A. at 411-13.

The standard of review is abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)); *Kumho Tire Company, Ltd., v. Carmichael*, 526 U.S. 137, 152 (1999); *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 514-515 (6th Cir. 1998).

Applying the abuse of discretion review standard, the claimed error in not permitting Olender's witness to opine on the conduct of the investigation is without merit.

### III.  CONCLUSION

We find no error on the part of the district court and AFFIRM Olender's conviction and sentence.