NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0031n.06

Case Nos. 21-5174/5199

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 19, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| DIMITAR PETLECHKOV, | ) | TENNESSEE |
|     Defendant-Appellant. | ) | |
| | ) | |

Before: SUHRHEINRICH, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. This is Dimitar Petlechkov's second appeal from a criminal judgment against him for mail fraud. He raises five issues. We affirm.

I.

FedEx gives high-volume customers shipping discounts. Dimitar Petlechkov (a native of Bulgaria) wanted access to those discounts. So he called FedEx, claiming to be a vendor for one of their high-volume shippers, General Dynamics. After FedEx linked his account to the General Dynamics account, Petlechkov "used those discounted rates to offer shipping services to third parties, pocketing the profit margin between what he charged the third parties and what he paid FedEx." *United States v. Petlechkov*, 922 F.3d 762, 766 (6th Cir. 2019). This went on for roughly five years. During that time, Petlechkov shipped over 63,000 packages.

In 2014, FedEx uncovered the scheme, and the government charged Petlechkov with twenty counts of mail fraud. *See* 18 U.S.C. § 1341. A jury convicted him on all twenty counts.

The district court sentenced Petlechkov to thirty-seven months in prison and ordered him to pay FedEx $801,219.02 in restitution. The district court also included a preliminary forfeiture order with a money judgment of $367,099.62. The preliminary forfeiture order listed three parcels of property as forfeitable substitute assets (in case the money judgment could not be collected). Petlechkov appealed his convictions, sentence, and restitution award. We vacated Petlechkov's convictions on seventeen counts, affirmed his convictions on three, and remanded on his sentence and restitution award. *See Petlechkov*, 922 F.3d at 771.

On remand, the district court again sentenced Petlechkov to thirty-seven months in prison. And it imposed the same restitution award—$801,219.02—and the same preliminary forfeiture order. This time, however, the court also imposed a two-year term of supervised release. Petlechkov moved to vacate the preliminary forfeiture order and moved for a new trial. The court denied both motions, and Petlechkov appealed.

II.

Petlechkov raises five issues on appeal. He argues that the district court erred in: (1) denying his motion for a new trial based on newly discovered evidence; (2) determining the loss amount; (3) determining the restitution amount; (4) denying his motion to vacate the preliminary forfeiture order; and (5) imposing a two-year term of supervised release. We take each in turn.

A.

We first consider whether the district court erred in denying Petlechkov's motion for a new trial based on newly discovered evidence. At trial, a FedEx representative confirmed that it was its "operating procedure" to extend a company's shipping discounts to its vendors. R. 75, Pg. ID 397. But at the resentencing hearing, Thomas Murrey (a FedEx Express litigation associate)

testified that FedEx's account managers have discretion to grant shipping discounts to a company's vendors. He explained that extending discounts to vendors is just a "standard that's existed through the years." R. 256, Pg. ID 3015. And the company did not have a written policy regarding when to extend the discounts. Petlechkov moved for a new trial based on Murrey's testimony, arguing that it conflicted with the trial testimony. The district court denied the motion.

We review the district court's denial for an abuse of discretion. *United States v. Olender*, 338 F.3d 629, 635 (6th Cir. 2003). In doing so, we are mindful that motions for a new trial based on newly discovered evidence are "disfavored and should be granted with caution." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). Indeed, a district court may grant a new trial based on newly discovered evidence only if the defendant establishes that "(1) the evidence was discovered after the trial, (2) it could not have been discovered earlier with due diligence, (3) it is material and not merely cumulative or impeaching, and (4) it would likely produce an acquittal if the case was retried." *Id.* at 586–87; *see Olender*, 338 F.3d at 635.

To prove Petlechkov committed mail fraud, the government had to show that "he devised a scheme to defraud, used the mails in furtherance of that scheme, and intended to deprive the victim of money or property." *Petlechkov*, 922 F.3d at 766. The fraudulent scheme "must include a *material* misrepresentation." *Id.* And that misrepresentation must be one "that could influence the decision of a 'person of ordinary prudence and comprehension.'" *Id.* (alteration adopted) (quoting *United States v. Jamieson*, 427 F.3d 394, 415–16 (6th Cir. 2005)).

Petlechkov focuses on the last requirement. According to him, without a written policy allowing a company's vendors to receive its discounts, the jury could not have concluded that his misrepresentation (that he was a General Dynamics vendor) was "calculated to deceive a FedEx employee of ordinary prudence and comprehension beyond a reasonable doubt." Appellant's Br.

at 26. In other words, Petlechkov believes the account manager should have been more skeptical of his deceit. And Petlechkov asserts that his misrepresentation therefore should not have influenced a "person of ordinary prudence and comprehension." *Petlechkov*, 922 F.3d at 766 (cleaned up).

We disagree. To begin, we've already held that "Petlechkov's false statement was capable of influencing FedEx's decision." *Id.* at 767. And that's true regardless of whether FedEx has a written policy governing when a company's vendors receive its shipping discounts. Written policy or not, it was "standard" for account managers to extend shipping discounts to vendors. R. 256, Pg. ID 3015.

In any event, Murrey said nothing that suggests Petlechkov's false statement could not have influenced "the decision of a person of ordinary prudence and comprehension." *Petlechkov*, 922 F.3d at 766 (cleaned up). In fact, Murrey's testimony supports the opposite conclusion. Murrey explained that Petlechkov's account "looked like a General Dynamics' account." R. 256, Pg. ID 3016. What's more, Murrey testified that before Petlechkov opened his account with FedEx, he had used a similar ruse to defraud another shipping company—DHL. But around the time that Petlechkov opened his FedEx account, DHL ceased domestic operations in the United States. This led to a rush of DHL customers opening accounts with FedEx. So, according to Murrey, when Petlechkov asked FedEx to link his account to the General Dynamics account, it would have "made perfect sense" to FedEx's account manager. *Id.* at 3028. And Petlechkov hasn't pointed to anything in Murrey's testimony that would suggest otherwise. Thus, he has not shown that the "newly discovered evidence" would "likely produce an acquittal if the case was

retried." *Turns*, 198 F.3d at 586–87. We thus affirm the district court's denial of Petlechkov's motion for a new trial.

B.

Next, Petlechkov challenges his sentence. He argues that the district court erred in applying a 14-level enhancement to his base-level offense because it "improperly calculated" FedEx's loss under the Sentencing Guidelines. Appellant's Br. at 31. The Guidelines provide for a 14-level enhancement if a loss is more than $550,000 but less than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H).

We review the district court's estimate of the loss amount for clear error. *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021). But we review its "methodology for calculating" the loss de novo. *Id.* (citation omitted). The district court "need only make a reasonable estimate of the loss using a preponderance of the evidence standard." *United States v. Nicolescu*, 17 F.4th 706, 721 (6th Cir. 2021) (citation omitted); *see* U.S.S.G. § 2B1.1 cmt. n.3(C).

That estimate must be based on the "available information" and "need not be determined with precision." *United States v. Triana*, 468 F.3d 308, 320 (6th Cir. 2006) (citation omitted); *see also United States v. Minor*, 831 F.3d 601, 607 (5th Cir. 2016) (explaining that the question is not "whether the district court's estimate was the *most* reasonable" but only whether it was reasonably related to the offense's "actual or intended harm" (alteration adopted)). That's especially true for fraud cases, where it is often difficult to calculate the loss with precision. *See United States v. Ellis*, 938 F.3d 757, 760–61 (6th Cir. 2019). And in an appeal challenging a district court's loss estimate, the defendant bears a heavy burden. He must persuade us that the district court's number

"was not only inaccurate, but was outside the realm of permissible computations." *Nicolescu*, 17 F.4th at 720 (citation omitted).

The district court made a reasonable estimate of FedEx's loss based on the available information. To prove the loss amount, the government calculated what Petlechkov would have owed to FedEx without the General Dynamics account's substantial discounts. From there, the government subtracted the amount Petlechkov actually paid and factored in any "miscellaneous charges" and "credits and adjustments." R. 142, Pg. ID 2292–93.[1] This resulted in a loss amount of $1,515.250.43.

Next, the government adjusted this amount to account for any discounts Petlechkov's clients—the third-party shippers—would have been entitled to if they had shipped from their own FedEx accounts rather than Petlechkov's account. To calculate that, the government averaged the third-party shippers' discounts, which came out to 33 percent. Factoring that in produced a loss estimate of $801,219.02—the number the district court adopted.

Petlechkov contends that this loss estimate was incorrect because it was based on an average discount rate. According to Petlechkov, the court needed to calculate an "exact loss amount" by examining the discounts that would have otherwise applied to each shipment Petlechkov made. Appellant's Br. at 28.

But that calculation was either impossible or exceedingly impractical. FedEx could not "calculate specifics as to each shipment because the shipping records . . . on each shipment [were] no longer available." R. 142, Pg. ID 2282. And although Petlechkov's invoices were still

---

[1] Petlechkov also asserts that the district court failed to account for discounts related to service failures and other adjustments. But testimony from the resentencing hearing confirms that the loss calculation did account for these discounts. *See* R. 256, Pg. ID 2992–93. And, in any event, Petlechkov has not shown how failing to account for those discounts would place the district court's estimate "outside the realm of permissible computations." *Nicolescu*, 17 F.4th at 720 (citation omitted).

available, there were 744 of them, and they contained over 63,000 individual shipments. Thus, FedEx's representative testified that using the invoices to do a weighted comparison "really was impractical" and, in fact, couldn't be done to "rerate everything." *Id.* at 2288. Given the "practical difficulties" in determining a weighted discount rate, the district court's reliance on an average discount rate was reasonable. *Nicolescu*, 17 F.4th at 721; *see also United States v. Stoupis*, 530 F.3d 82, 85 (1st Cir. 2008) ("Courts can, and frequently do, deal with rough estimates." (citation omitted)). Indeed, the Guidelines expressly provide that district courts may rely on similar estimates in other circumstances. *See* U.S.S.G. § 2B1.1 cmt. n.3(C)(iv) (stating that courts can reasonably estimate a loss by multiplying the "approximate number of victims" by the "average loss to each victim"). In short, the district court made a reasonable estimate of the loss based on the available information.[2] We affirm the loss amount.

## C.

Petlechkov also challenges the district court's restitution order. Here, the district court ordered Petlechkov to pay FedEx $801,219.02. We review the availability of restitution de novo. *See United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012). But we review the amount of restitution for an abuse of discretion. *Id.*

First, Petlechkov argues that FedEx is not a "victim" entitled to restitution under the Mandatory Victims Restitution Act (MVRA) because it was "reckless in providing Mr. Petlechkov a vendor discount." Appellant's Br. at 32. For support, Petlechkov leans on *United States v. Litos*, 847 F.3d 906 (7th Cir. 2017). In *Litos*, the Seventh Circuit held that a bank was not entitled to

---

[2] Petlechkov contends that the district court should have used his gain, rather than FedEx's loss, as the loss amount. *See* U.S.S.G. § 2B1.1 cmt. n.3(B). But because FedEx's loss could be reasonably estimated, the district court could not use Petlechkov's gain as the loss amount. After all, "the district court 'shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.'" *Nicolescu*, 17 F.4th at 721 (quoting U.S.S.G. § 2B1.1 cmt. n.3(B)).

restitution under the MVRA because it recklessly "ignored clear signs that the loans that it was financing at the behest of the defendants were phony." *Id.* at 907. The loans "were a joke on their face," and the bank "knew what was going on." *Id.* at 908 (cleaned up).

Here, even assuming that there is a recklessness exception to the MVRA, nothing in the record shows that FedEx was reckless. After all, Petlechkov's account "looked like a General Dynamics' account." R. 256, Pg. ID 3016. And given DHL's recent decision to cease domestic operations, Petlechkov's request would have "made perfect sense" to FedEx. *Id.* at 3028. So, unlike in *Litos*, nothing in the record establishes FedEx's "knowing involvement in potentially harmful activity." *Litos*, 847 F.3d at 908.

Petlechkov's second argument fares no better. He contends that the district court did not make a "reasoned estimate" of FedEx's loss. Appellant's Br. at 35–36. He gives two reasons. First, he says that the restitution order failed to account for "discounts, credits, and refunds." *Id.* at 35. But testimony from the sentencing and resentencing hearings shows that the district court did consider credits, refunds, and other adjustments in calculating FedEx's loss. And as discussed above, the district court's decision to use the third-party shippers' average discount produced a reasonable estimate of the loss amount. *See United States v. Osman*, 853 F.3d 1184, 1189 (11th Cir. 2017) (explaining that "the determination of the restitution amount is by nature an inexact science," so a district court "may accept a 'reasonable estimate' of the loss based on the evidence presented" (citation omitted)); *see also United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015) (noting that "the MVRA does not require courts to calculate restitution with *exact* precision").

Petlechkov also contends that the restitution order failed to account for the "additional business" Petlechkov brought to FedEx. Appellant's Br. at 35. Not so. At the resentencing

hearing, Murrey testified that Petlechkov did not bring new business to FedEx. After all, the third-party shippers all had preexisting accounts with FedEx. Petlechkov simply gave them "better discounts than they were supposed to get based on their volume of shipping." R. 256, Pg. ID 3029. We find no error and affirm the restitution order.

D.

Petlechkov argues next that the district court erred by upholding its preliminary forfeiture order. We review "the interpretation of federal forfeiture laws *de novo*." *United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013). And we review factual findings for clear error. *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001).[3]

A criminal defendant convicted of mail fraud must forfeit "any proceeds" obtained "as [a] result of [the] violation." 21 U.S.C. § 853(a)(1); *see* 18 U.S.C. § 982. And if those proceeds are unavailable because of the defendant's "act or omission," then the court must "order the forfeiture of any other property of the defendant, up to the value" of the missing funds. 21 U.S.C. § 853(p).

The preliminary forfeiture order here instructed Petlechkov to forfeit a personal money judgment of $367,099.62. And it provided that, if that money was unavailable, Petlechkov must forfeit certain "[s]ubstitute assets"—three parcels of property—"up to the value of the" personal money judgment. R. 248, Pg. ID 2908.

Petlechkov contests the order's inclusion of the substitute assets on three grounds. First, Petlechkov contends that the properties can't be forfeited because they are owned by a third party, not him. But Petlechkov "cannot assert a third party's interest . . . in a direct challenge to a preliminary forfeiture order." *United States v. Coffman*, 574 F. App'x 541, 563 (6th Cir. 2014); *see United States v. Erpenbeck*, 682 F.3d 472, 480 (6th Cir. 2012). Instead, the third party must

---

[3] The parties dispute whether we should review this claim under the plain-error standard. *Compare* Appellee's Br. at 34, *with* Reply Br. at 3. We need not decide that here because the argument fails under any standard of review.

assert its interest in the assets in an ancillary proceeding. *See Coffman*, 574 F. App'x at 563; Fed. R. Crim. P. 32.2(b)(2)(A) (stating that third-party interests must be adjudicated in ancillary proceedings).[4]

Second, Petlechkov argues that the government failed to establish that the money was unavailable because of his "act or omission." Appellant's Br. at 40 (quoting 21 U.S.C. § 853(p)(1)). But Petlechkov acted alone in his fraudulent scheme. And the government was unable to locate any other assets owned by Petlechkov. Indeed, Special Agent Marcus Vance confirmed that Petlechkov had "no other assets of value" besides "nominal value in [his] bank accounts." R. 256, Pg. ID 3006. Because Petlechkov acted alone and had no other assets, the district court reasonably concluded that the money was dissipated by Petlechkov's "act or omission." 21 U.S.C. § 853(p)(1); *see United States v. Gordon*, 710 F.3d 1124, 1166 (10th Cir. 2013) (concluding that it was "reasonable" to infer that "the money was dissipated due to [the defendant's] conduct" when it "could not be found in [his] accounts").[5]

Finally, Petlechkov contends that the district court erred because the substitute property is worth more than the personal money judgment against him. Under § 853(p)(2), the district court must order forfeiture of assets "up to the value of" the money owed—here, $367,099.62. And the district court did just that. It ordered forfeiture of the property "up to the value of" the money

---

[4] Contrary to Petlechkov's assertion, the district court was not required to first find that the properties belonged to him. *See Coffman*, 574 F. App'x at 563–64 (rejecting a similar challenge to a preliminary forfeiture order); *United States v. Gordon*, 710 F.3d 1124, 1167–68 (10th Cir. 2013) ("The court does not determine that a substitute asset belongs to the defendant when it includes it in the preliminary order of forfeiture." (cleaned up)).

[5] At times, Petlechkov seems to suggest that forfeiture of the properties is improper because they were not acquired because of his crimes. But substitute property need not be tainted by the crime. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) (noting that § 853(p) "permits the Government to confiscate property untainted by the crime").

judgment—no more. R. 248, Pg. ID 2908. So we affirm the district court's denial of Petlechkov's motion to vacate the preliminary forfeiture order.

E.

Petlechkov's last challenge disputes his two-year term of supervised release. Under the Sentencing Guidelines, a district court "ordinarily should not impose a term of supervised release" when—as here—it is "not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). According to the Guidelines, if "such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution." *Id.* § 5D1.1 cmt. n.5. That said, a court may impose a term of supervised release if in that specific case, "it would provide an added measure of deterrence and protection." *Id.* But if a district court imposes a term of supervised release, its "explanation should directly address [§ 5D1.1(c)'s] recommendation against supervised release and provide the court's reasoning for taking a different course of action in the case before it." *United States v. Solano-Rosales*, 781 F.3d 345, 353–54 (6th Cir. 2015).

Petlechkov argues that imposing a two-year term of supervised release was procedurally unreasonable. He says that the district court erred by failing to adequately discuss its decision to depart from § 5D1.1(c)'s recommendation.[6]

We normally review a district court's sentencing decision "under a deferential abuse-of-discretion standard." *Id.* at 351 (citation omitted). But Petlechkov did not object to the supervised-release term below. Thus, we review it only for plain error. *Id.* To establish plain error,

---

[6] Petlechkov also contends that the district court failed to properly consider the necessary factors when imposing the term of supervised release. *See* 18 U.S.C. §§ 3583(c), 3553(a). But the district court expressly evaluated nearly all the relevant factors during the resentencing hearing, *see* R. 256, Pg. ID 3081–88, and its "single consideration of the sentencing factors" was sufficient, *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007); *see also United States v. Domínguez-Figueroa*, 866 F.3d 481, 486 (1st Cir. 2017).

Petlechkov must show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010); *see United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (explaining that "the burden of establishing entitlement to relief for plain error is on the defendant claiming it").

The district court did not plainly err. Even assuming that the district court didn't provide an adequate explanation for its decision to impose a term of supervised release—which, as explained below, is far from clear—Petlechkov has not shown that this error affected his substantial rights. "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [the defendant] would have received a more favorable sentence." *United States v. Hatcher*, 947 F.3d 383, 394 (6th Cir. 2020) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up); *see Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018).

Petlechkov has not met that standard. To begin, the district court expressly acknowledged § 5D1.1(c)'s substantive recommendation, *see* R. 256, Pg. ID 3091 (noting that "there's really not supposed to be" a term of supervised release), but it concluded that a term of supervised release would be important if Petlechkov were not immediately deported, *see id.* at 3092. On top of that, throughout the resentencing hearing, the district court expressed detailed concerns about Petlechkov's behavior and conduct. For example, the district court observed that Petlechkov was not remorseful and didn't think he did anything wrong. It also recounted that Petlechkov had used a similar strategy to defraud DHL before it ceased domestic operations and that he continued to use that strategy to defraud DHL's international operations until 2013. And even after Petlechkov was caught by FedEx, the district court noted, he attempted to "reemploy" the same fraudulent

strategy with UPS. *Id.* at 3083; *see id.* at 3030, 3088 (concluding that Petlechkov's actions were "part of a broader criminal thought process"); *cf. United States v. Becerril-Pena*, 714 F.3d 347, 351 (5th Cir. 2013) (affirming term of supervised release despite § 5D1.1(c)'s recommendation because of defendant's criminal history). In light of the district court's express acknowledgement of § 5D1.1(c)'s recommendation and its careful consideration of the sentencing factors, we cannot conclude that Petlechkov has shown a "reasonable probability" that the district court would not have imposed the term of supervised release if it had given a lengthier explanation. *Hatcher*, 947 F.3d at 394 (citation omitted).

Finally, Petlechkov briefly suggests that the two-year term of supervised release is substantively unreasonable. But the district court considered the relevant factors and imposed a within-Guidelines term of supervised release. *See United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). Thus, it did not err.

*         *         *

We affirm.