*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

    *v.*

A. WILLIAM ERPENBECK, JR.,

                *Defendant,*

and

MICHAEL L. BAKER, Trustee in Bankruptcy
for A. William Erpenbeck, Jr.,

                *Movant-Appellant.*

No. 11-3530

> Appeal from the United States District Court
> for the Southern District of Ohio at Cincinnati.
> No. 1:03-cr-50-1—Sandra S. Beckwith, District Judge.

Argued: June 7, 2012

Decided and Filed: June 21, 2012

Before: SUTTON, McKEAGUE and RIPPLE[*], Circuit Judges.

_____

## COUNSEL

**ARGUED:** Debra S. Pleatman, ZIEGLER & SCHNEIDER, P.S.C., Covington, Kentucky, for Appellant. Deborah D. Grimes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Debra S. Pleatman, ZIEGLER & SCHNEIDER, P.S.C., Covington, Kentucky, for Appellant. Deborah D. Grimes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

[*] The Honorable Kenneth F. Ripple, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  In a fact pattern befitting a John Grisham novel, FBI agents found a cooler filled with more than $250,000 in cash buried at a private golf course outside Cincinnati.  The money belonged to A. William Erpenbeck, Jr., a convicted fraudster then serving a 300-month sentence in federal prison.  What came next is a tug-of-war over who gets the money:  the government, which wants a criminal forfeiture of the cash, or the trustee of Erpenbeck's bankruptcy estate, who wants to distribute the cash to Erpenbeck's creditors.  The district court sided with the government, but because the government did not provide the trustee with sufficient notice of the forfeiture proceeding, depriving him of the chance to assert his claim, we vacate the final order of forfeiture and remand.

I.

As president of the Erpenbeck Development Company, once one of the largest residential developers in the Cincinnati area, Erpenbeck orchestrated a fraud that bilked nearly $34 million from home buyers and banks between 1999 and 2002.  *United States v. Erpbenbeck*, 532 F.3d 423, 426–30 (6th Cir. 2008).  Erpenbeck pled guilty to federal bank-fraud charges in April 2003 and received a 300-month prison sentence.  *Id*. at 428–30.  The district court also ordered him to forfeit the proceeds of the fraud: $33,935,878.02.  *See* 18 U.S.C. § 982(a).

Six years later, the FBI learned that, before he went to prison, Erpenbeck gave a friend more than $250,000 in cash and asked him to hold the money until his release. The friend put the cash in a cooler and buried it near the green of the third hole (a 366-yard par four) at Summit Hills Country Club in Crestview Hills, Kentucky.  FBI agents unearthed the cooler on October 1, 2009, and the government sought forfeiture of the cash.

The government posted notice of the forfeiture online (at www.forfeiture.gov) in November and December 2009.  Three months later, the trustee of Erpenbeck's bankruptcy estate—Erpenbeck's creditors filed an involuntary bankruptcy petition in July 2002, *see* 11 U.S.C. § 303—contacted an Assistant United States Attorney, told her the estate had an interest in the cash and asked about the government's plans.  The government's attorney did not tell the trustee about the ongoing forfeiture proceedings. Because no one filed a petition asserting an interest in the cash, the district court entered a final order of forfeiture vesting "all right, title, and interest" to the cash in the United States.  R. 150; *see* 21 U.S.C. § 853(n)(7).

The trustee filed a motion to stay the final order of forfeiture in November 2010, contending that the cash belonged to the bankruptcy estate.  The district court denied the motion, holding that the trustee waived his claim because he did not file a timely petition asserting his interest.

## II.

## A.

To obtain title to property through criminal forfeiture, the government must give third parties a chance to assert competing interests in the property.  *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 330 (6th Cir. 2009).  After a district court enters a preliminary order of forfeiture, federal law requires the government to provide notice of the proceedings, giving interested parties thirty days to file a petition asserting their claims.  21 U.S.C. § 853(n)(1)–(2).  If anyone files a petition, the court must hold an ancillary hearing to determine the bona fides of his alleged interest.  *Id*. § 853(n)(2).  If no one files a petition within the statutory time frame, "clear title" vests in the United States, extinguishing all other parties' interests in the property.  21 U.S.C. § 853(n)(7); *see United States v. O'Brien*, Nos. 98-3114, 98-3206, 1999 WL 282687, at *2 (6th Cir. Apr. 28, 1999); *United States v. Marion*, 562 F.3d 1330, 1339 (11th Cir. 2009).

Acknowledging he did not file a petition within thirty days of online publication of the notice, the trustee maintains that the district court could not extinguish his interest

in the cash because the government never gave him *direct* notice of the forfeiture action. The trustee never knew the thirty-day clock was ticking—having apparently not occupied his free time by browsing www.forfeiture.gov—and thus never had a chance to assert his interest in a timely manner.  For its part, the government acknowledges it did not provide direct notice of the forfeiture action to the trustee.

Did the government's notice suffice?  More to the point, was notice by publication sufficient or was direct notice to the trustee required?  That depends—on the interrelation of two subsections of the criminal forfeiture statute:  21 U.S.C. § 853.

The first of these subsections, § 853(j), incorporates the civil forfeiture statute. It says:  "Except to the extent that they are inconsistent with the provisions of this section, the provisions of section 881(d) of this title shall apply to a criminal forfeiture under this section."  21 U.S.C. § 853(j).  Section 881(d) in turn incorporates "[t]he provisions of law relating to the . . . judicial forfeiture . . . of property for violation of the customs laws."  And the statute governing customs-related forfeitures requires the government to publish notice *and* to send direct "[w]ritten notice . . . to each party who appears to have an interest in the seized article."  19 U.S.C. § 1607(a).  So far so good from the trustee's perspective.  The direct-notice requirement applicable to civil forfeitures governs criminal forfeitures as long as it is not "inconsistent with" other provisions of the criminal forfeiture statute.

That leads to the other relevant subsection.  One potential inconsistency with this direct-notice requirement appears in § 853(n)(1), which says:

> Following the entry of an order of forfeiture under this section, the United States *shall publish notice* of the order and of its intent to dispose of the property in such manner as the Attorney General may direct.  The Government *may also, to the extent practicable*, *provide direct written notice* to any person known to have alleged an interest in the property that is the subject of the order of forfeiture *as a substitute for published notice* as to those persons so notified.

21 U.S.C. § 853(n)(1) (emphasis added).  A first glance suggests tension between the two provisions, as § 853(n)(1) seems to make direct notice discretionary while § 1607(a)

makes it mandatory.  But that is not a necessary reading of  § 853(n)(1) or even the best reading of it.  Section § 853(n)(1) by its terms gives the government discretion to provide direct notice "*as a substitute for published notice* as to those persons so notified." (emphasis added).  The provision thus does not give the government a free hand in deciding whether to provide interested third parties with direct notice; it merely gives the government discretion to employ direct notice *as a substitute* for published notice.  Practically speaking, that means parties who receive direct notice may not complain about defects in publication notice because the direct notice operates as a substitute—a safe harbor—for any publication notice otherwise required.  *See United States v. Puig*, 419 F.3d 700, 703–04 (8th Cir. 2005) (claimant who received actual notice may not complain about defect in published notice).

Buttressing this conclusion is the constitutional-avoidance canon.  If a statute is susceptible of "two plausible . . . constructions," one of which "would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005).  Imagine if the statute did not require direct notice to parties whom the government knows, or reasonably should know, have an interest in the forfeitable property.  That would raise serious, likely devastating, constitutional objections.  Due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of" a legal action that will determine their rights to property, and to "afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  When the government knows not whom the forfeiture affects, constructive notice by publication suffices.  *Id*. at 317.  But that is not true when the government knows or reasonably should know whom to notify.  As to them, the government must attempt to provide direct notice of the proceeding.  *Id*. at 318–19; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 797–98 (1983) (requiring government to provide direct notice to mortgage holder who has a publicly recorded interest before selling property to satisfy tax lien).

A recent amendment to Rule 32.2 of the Federal Rules of Criminal Procedure supports this reading.  As of December 1, 2009, Rule 32.2, applicable to criminal forfeitures, requires the government to "publish notice of the order [of forfeiture] *and* send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture."  Fed. R. Crim. P. 32.2(b)(6) (emphasis added).  The district court entered the preliminary order of forfeiture in this case on November 10, 2009, weeks before the amendment went into effect, meaning that the prior version of the Rule governs.  *See United States v. McGinty*, 610 F.3d 1242, 1248 n.5 (10th Cir. 2010).  Yet the thrust of the amendment was not to change current requirements; it was to codify them.  The amendment "codif[ies] and restate[s] prevailing due process requirements governing adequate notice."  *United States v. Davenport*, 668 F.3d 1316, 1322–23 (11th Cir. 2012).

## B.

Does the trustee fall within the class of third parties to whom the government owes direct notice?  In other words, in the words of the statute, does he "appear[] to have an interest in the seized article"?  19 U.S.C. § 1607(a).

The short answer is yes.  Under the Bankruptcy Code, when Erpenbeck's creditors filed an involuntary bankruptcy petition against him in July 2002, all of his property, "wherever located and by whomever held," became part of the bankruptcy estate.  11 U.S.C. § 541(a).  That would include the $250,000 buried near the third hole of Summit Hills Country Club.

The long answer also is yes, though it requires a few additional answers to the government's contrary position.  As the government sees it, the cash did not belong to Erpenbeck in July 2002 because, under the forfeiture statute's relation-back clause, 21 U.S.C. § 853(c), title to the cash retroactively vested in the government at the time of Erpenbeck's fraud.  Because the cash did not belong to Erpenbeck, it did not become part of the bankruptcy estate, and the trustee never had a right to direct notice.  *See United States v. Phillips*, 185 F.3d 183, 186–87 (4th Cir. 1999).

That might be true if the $250,000 represented the proceeds of Erpenbeck's fraud. Under the relation-back clause, "[a]ll right, title, and interest in the property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c). "[T]he property described in subsection (a)" covers *tainted property*: "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" his criminal activity. *Id*. § 853(a). If the cash were tainted property, title would have vested in the government at the time of Erpenbeck's fraud, which occurred prior to the bankruptcy filing, and the cash would not have entered the bankruptcy estate. *See In re Dreier LLP*, 452 B.R. 391, 410–12 (Bankr. S.D.N.Y. 2011).

But the government did not seek forfeiture of the cash as tainted property. It argued (and the district court found) that the cash was "substitute property"—untainted property that the government may seize to satisfy a forfeiture judgment if the tainted property is unavailable. 21 U.S.C. § 853(p); *see United States v. Hill*, 167 F.3d 1055, 1073 (6th Cir. 1999). Whether the trustee has a cognizable interest in the cash thus turns on whether the relation-back clause *also* applies to substitute property.

It does not. The relation-back clause extends only to tainted property—"property described in subsection (a)." 21 U.S.C. § 853(c). In construing a related section of the statute authorizing pretrial restraint of "property described in subsection (a)," we held that this identical limitation "convey[s] Congress's intent to authorize the restraint of *tainted* assets prior to trial, but *not* the restraint of *substitute* assets." *United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008) (discussing 21 U.S.C. § 853(e)). The same analysis holds here. The explicit reference to "property described in subsection (a)" in the relation-back clause limits the applicability of the relation-back principle to tainted property. As the Tenth Circuit, too, has held, "the United States does not have a ripened interest in . . . substitute property until (1) after the defendant's conviction and (2) the court determines the [tainted] property is out of the government's reach for a reason enumerated in [the statute]." *United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007); *see also United States v. Jewell*, 556 F. Supp. 2d 962, 967 (E.D. Ark. 2008);

*United States v. Jennings*, No. 5:98-CR-418, 2007 WL 1834651, at \*3–4 (N.D.N.Y. June 25, 2007); *United States v. Kramer*, No. 1:06-cr-200, 2006 WL 3545026, at \*7 (E.D.N.Y. Dec. 8, 2006).

The Fourth Circuit, we acknowledge, has gone the other way. Applying the statutory exhortation that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o), the court held that "the forfeiture of substitute property pursuant to [§] 853(p) relates back to the date of the acts giving rise to the forfeiture," *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003). The court reasoned that, although the relation-back clause does not say it applies to substitute property, neither does it "preclude the application of the relation-back principle to substitute property." *Id*. at 271. Then again, most "Stop" signs do not say "absolutely," and most are not accompanied by "Yield" signs. Yet (most) drivers still stop and yield. Consistent with our decision in *Parrett*, the explicit reference to "property described in subsection (a)" shows that Congress authorized the relation-back principle to apply to *tainted* assets, not *substitute* assets. 530 F.3d at 431. The ambiguity needed to trigger the "liberal[]" construction of this remedial provision simply does not exist. 21 U.S.C. § 853(o).

Even if the relation-back clause does not apply to substitute property, the government persists, the trustee still lacks a plausible claim to the cash (and thus has no right to direct notice) because his interest is not one the forfeiture statute allows a third party to assert in an ancillary proceeding. The statute allows a third party to assert two kinds of claims: (1) that he "is a bona fide purchaser for value," or (2) that he had "a legal right, title, or interest in the property . . . at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6). The trustee, all agree, is not a bona fide purchaser. *See Zartman v. First Nat'l Bank of Waterloo*, 216 U.S. 134, 135 (1910). And the trustee, the government claims, did not have an interest in the cash at the time of Erpenbeck's fraud. But that theory assumes that the "act[] which gave rise to the forfeiture of the" cash was Erpenbeck's fraud. 21 U.S.C. § 853(n)(6)(A). It was not. As substitute property, the

cash did not become subject to forfeiture until the tainted assets exceeded the government's grasp. *See Jarvis*, 499 F.3d at 1204. The government could not fail to find the tainted property until it tried to collect it, which did not happen until after Erpenbeck's conviction in April 2003 (several months after the bankruptcy filing). Because the trustee has a plausible claim to the cash that is not defeated by the relation-back principle and that is cognizable under § 853(n)(6), the government should have given him direct notice of the forfeiture action and an opportunity to assert the claim.

C.

The government offers several explanations for not providing direct notice to the trustee. It claims it had no reason to believe the bankruptcy case was still open in 2009, seven years after the filing of the bankruptcy petition. But a quick check of the docket would have shown the case remained open, surely the kind of "reasonably diligent effort[]" due process requires the government to undertake in identifying potential third-party claimants. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 491 (1988). Nor was the trustee a mysterious claimant lurking in the shadows. He had previously objected to the forfeiture of other Erpenbeck assets. On this record, the trustee's interest in the cash was not merely "conjectural" but one that, "in due course of business," should have "come to [the government's] knowledge." *Mullane*, 339 U.S. at 317.

The government also assumed the trustee would receive notice of the preliminary order of forfeiture through the district court's case management and electronic case filing ("CM/ECF") system because the trustee had previously filed a motion in Erpenbeck's criminal case objecting to the forfeiture of other property. But the government, not the trustee, bears the burden of establishing compliance with statutory notice requirements, *see United States v. Robinson*, 78 F.3d 172, 173, 175 (5th Cir. 1996); *cf. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 597 (6th Cir. 2004), *aff'd on other grounds*, 545 U.S. 308 (2005), and the government offers no evidence that reliance on CM/ECF in this instance to deliver notice was "reasonably calculated, under all the circumstances, to apprise [the trustee] of the pendency of" the forfeiture proceeding.

*Mullane*, 339 U.S. at 314. The government provided no evidence about how the evolving CM/ECF notification system worked at this time: whether it sent notices of docket activity to all counsel or just to counsel of record for the principal parties, not third-party movants like the trustee; whether it stopped sending notices to counsel who had not filed anything in the case for several years; or whether there was any other feature of the system at that point that would have prevented notice from going to the trustee. The trustee at all events disclaims ever receiving notice through CM/ECF. Without more, we cannot conclude that relying on CM/ECF alone to deliver notice was sufficient.

All of this is of no moment, the government adds, because the trustee obtained actual notice of the forfeiture action anyway. In pushing this point, the government invokes the district court's statement that the trustee "apparently concedes, albeit tacitly, that he did receive notice of the Court's order preliminarily forfeiting the contents of the cooler." R. 154 at 5. The district court reached this conclusion based on a single sentence in the trustee's motion: "Most notably, the discussions in which the Trustee asserted his claim to the Property were held *after the United States had filed its preliminary forfeiture motion in November of 2009 but before it filed its final order in June of 2010.*" *Id.* (quoting R. 151 at 4). This statement was not a concession, tacit or otherwise, that the trustee knew about the forfeiture. It refers to a discussion that took place in March 2010 in which the trustee told a government attorney about the estate's interest in the cash. The statement shows that the trustee *told* the government about the *estate's interest* before the district court entered the final order of forfeiture, not that the trustee *knew* about the *forfeiture proceeding* at that time.

The government's efforts to explain away its failure to notify the trustee overlook a simple reality: neither the forfeiture statute nor the Due Process Clause demands that the government undertake "heroic efforts" to provide the required notice; mailing the trustee a certified letter will suffice. *See Dusenberry v. United States*, 534 U.S. 161, 170, 172–73 (2002). Even though the trustee's interest in the cash was far from a mystery, the government did not take this modest step.

D.

That leaves the question of remedy.  The most sensible approach, and the one we adopt here, is to remand the case to the district court with instructions to accept a third-party petition from the trustee and to hold an ancillary proceeding under 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) to adjudicate the legitimacy of his claim.  *See United States v. Estevez*, 845 F.2d 1409, 1412 (7th Cir. 1988); *see also United States v. Robinson*, 434 F.3d 357, 362 (5th Cir. 2005); 3 Charles Alan Wright et al., Federal Practice & Procedure Criminal § 574 (4th ed. 2012) ("If a third-party claimant did not receive adequate notice of the criminal forfeiture action, that party may file a motion under Rule 60(b) . . . to reopen the ancillary proceeding."); Fed. R. Crim. P. 32.2, adv. cmte. notes ("In the rare event that a third party claims that he or she was not afforded adequate notice of a criminal forfeiture action, the person may file a motion under Rule 60(b) of the Federal Rules of Civil Procedure to reopen the ancillary proceeding.").

One other thing.  The trustee submits there is no need to go through the ancillary proceeding because the cash belonged to the bankruptcy estate from the get-go and therefore is not subject to forfeiture at all.  As the trustee sees it, the cash became property of the bankruptcy estate upon the filing of the bankruptcy petition in July 2002, *see* 11 U.S.C. § 541(a), and thus does not meet the statutory definition of "substitute property" because it is not "property of the defendant," 21 U.S.C. § 853(p). But this is nothing more than "an assertion that [the trustee] has a superior interest in [the cash]"—exactly the kind of argument that a third-party must make in an ancillary proceeding under § 853(n).  *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184–85 (2d Cir. 2007).  The forfeiture statute makes it clear that an ancillary proceeding is the *sole* avenue for a third party to assert an interest in forfeitable property.  21 U.S.C. § 853(k); *see Libretti v. United States*, 516 U.S. 29, 44 (1995) ("Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets *only* by means of the hearing afforded under 21 U.S.C. § 853(n)." (emphasis added)).

The trustee claims that *United States v. Surgent*, No. 04-CR-364, 2009 WL 2525137, at \*29 (E.D.N.Y. Aug. 17, 2009), an unpublished decision, supports its motion. Maybe so, though the opinion is so thinly reasoned it is difficult to know why the court did what it did. At all events, the decision conflicts with the well-established notion that the ancillary proceeding is the sole means for third parties to assert their interests in forfeitable property. *See* 21 U.S.C. § 853(k); *Libretti*, 516 U.S. at 44.

The Bankruptcy Code's automatic-stay provision does not mandate a different result. Filing a bankruptcy petition usually "operates as a stay, applicable to all entities," of a variety of actions, including "any act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). But the Code exempts from this automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor." *Id*. § 362(b)(1). Because criminal forfeiture is part and parcel of a criminal case, *see Libretti*, 516 U.S. at 39, it falls squarely within this exemption. *See In re Rodriguez*, No. 07-276, 2008 WL 8448043, at \*4 (9th Cir. BAP July 10, 2008); *see also United States v. Coluccio*, 19 F.3d 1115, 1117 n.2 (6th Cir. 1994).

## III.

For these reasons, we vacate the final order of forfeiture and remand for further proceedings consistent with this opinion.