NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0251n.06

No. 20-6103

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jun 22, 2022

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CHRISTINA CARMAN, | ) | DISTRICT OF KENTUCKY |
| Defendants-Appellants. | ) | |
| | ) | UNPUBLISHED APPENDIX |
| | ) | |
| | ) | |

Before: SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Today's published opinion addresses an issue of first impression for our court. This unpublished appendix to that opinion contains our decision as to Carman's separate appeal of two orders entered in her ancillary proceeding below.

**I.**

Prior to sentencing, Maddux and the government jointly submitted an agreed preliminary order of forfeiture, which listed specific property that Maddux agreed to forfeit. Maddux admitted that the "property constitutes or is derived from proceeds traceable to the offenses," R. 510 at 4270, and thus was forfeitable, *id.* at 4271 (citing 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c)). The court entered the order, stating that "[t]he Court has determined, based upon either the evidence already in the record or the Defendant's guilty plea, that the United States has

established the requisite nexus between the property listed above and the offenses." R. 535 at 4395–96.

Carman then filed a verified petition, in which she claimed interests in various items of property forfeited by Maddux: one piece of real property, several vehicles, coins, jewelry, as well as bank and brokerage accounts. She claimed that this property either was not connected to Maddux's crime, was jointly owned by her and Maddux, or was exclusively hers (not Maddux's). That initiated her so-called ancillary proceeding—an opportunity for claimants to prove legitimate interests in a defendant's to-be-forfeited property and petition the court to exclude that property from the final forfeiture order. *See* 21 U.S.C. § 853(n)(6). After some discovery, the district court granted the government's motion for summary judgment as to all of Carman's ancillary claims. She now appeals.

## II.

The government may seek forfeiture of specific property connected to criminal activity. *See* 18 U.S.C. §§ 981, 982; 21 U.S.C. § 853; 28 U.S.C. § 2461(c). To begin the process, the court enters a preliminary forfeiture order listing the specific property to be forfeited; it must do so only after determining, by a preponderance of the evidence, that "the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A); *United States v. Jones*, 502 F.3d 388, 391–92 (6th Cir. 2007).

Once the preliminary order is entered, a third-party claimant may petition the court to begin an ancillary proceeding. *See generally* 21 U.S.C. § 853(n)(6); *United States v. Erpenbeck*, 682 F.3d 472, 480 (6th Cir. 2012). Such claimants may assert only their ownership interest in specific property; they may not challenge the property's nexus with the crime. *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014). And claimants, not the government, have the burden to show

their ownership interest by a preponderance of the evidence. 21 U.S.C. § 853(n)(6); *United States v. Salti*, 579 F.3d 656, 661 (6th Cir. 2009).

By statute, 21 U.S.C. § 853(n)(6), Congress has restricted the arguments that can be made in an ancillary proceeding. Claimants are entitled to reclaim forfeited property on only two grounds: (1) if the claimant's interest in forfeitable property "vested in the [claimant] rather than the defendant or was superior to" the defendant's interest in the property "at the time of the commission of the acts which gave rise to the forfeiture"; or (2) if the claimant was a "bona fide purchaser for value . . . and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(A), (B); *Fabian*, 764 F.3d at 638.

The first ground, in turn, gives a claimant two theories: either that her interest "is vested or is superior to that of the criminal owner." *United States v. Campos*, 859 F.2d 1233, 1239 (6th Cir. 1988). We "look to 'the law of the jurisdiction that created the property right to determine the petitioner's legal interest.'" *Salti*, 579 F.3d at 668 (citation omitted). But, to succeed under either theory, the claimant must skirt the "relation-back" clause in § 853(c), which provides that "[a]ll right, title, and interest in [tainted property] vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) (explaining that the relation-back clause "works hand in hand with" § 853(n)(6)(A)). By virtue of the relation-back clause, the defendant's interest in tainted property "vest[s] in the *government* at the time of" the defendant's crime. *Erpenbeck*, 682 F.3d at 477 (emphasis added).

The second ground, the bona fide purchaser exception, allows claimants to assert interests in property acquired *after* the criminal act—bypassing the relation-back clause. *See United States v. Huntington Nat'l Bank*, 682 F.3d 429, 434 (6th Cir. 2012). But the exception is narrow. The

claimant must prove she acquired the property interest for value and "had no reason to believe that the property was subject to forfeiture." *Id.* at 433.

### III.

*Motion to Compel.* Carman first appeals the denial of her motion to compel discovery, which sought to depose retired ATF Special Agent Thomas Lesnak. Her theory was that, during her and Maddux's scheme, Lesnak paid her and Maddux as part of an undercover ATF operation involving tobacco distributors, and those funds (not just the tainted cigarette-sale proceeds) were used to purchase some of the property she claimed in the ancillary proceedings.

We review for an abuse of discretion, *United States v. Pirosko*, 787 F.3d 358, 365 (6th Cir. 2015), and our review is especially deferential here, where Rule 32.2(c) "expressly" confers "discretion to determine whether discovery would be 'necessary or desirable to resolve factual issues'" in ancillary proceedings, *United States v. Hall*, 877 F.3d 676, 683 n.3 (6th Cir. 2017) (quoting Fed. R. Crim. P. 32.2(c)(1)(B)); Fed. R. Crim. P. 32.2(c)(1)(B) (stating that the court "may permit" discovery). And, to warrant reversal of the denial of a motion to compel discovery, we require "a clear showing that the denial . . . resulted in actual and substantial prejudice." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).

Carman has not made that showing. We focus on the district court's determination that the discovery Carman sought was not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Carman testified—for the first time in her ancillary proceeding, and only after the New York Times reported a large covert ATF cigarette operation—that the ATF secretly paid her and Maddux. The district court viewed that timing as suspect; despite Carman's assertion that she met Agent Lesnak in 2008, this new theory was not mentioned at her criminal trial or in her initial

motion for summary judgment on her ancillary claims. Moreover, she failed to produce any evidence corroborating the alleged ATF payments—not even a humble bank record. And, while Carman claimed that at least two people were aware of the payments (Hobie Anderson, an acquaintance allegedly serving as a confidential ATF informant, and Howard Slibeck, her accountant), she produced nothing showing that she sought discovery from those more accessible sources.

Further, even when objecting to the magistrate judge's observation of these flaws, Carman still failed to substantiate her story, stating only that Anderson's testimony would not "prove or disprove the payment of funds," and that Slibeck's testimony would "fail[] to establish the amount of" her payments from the ATF. R. 724 at 8678. Her point was that those sources were no substitute for Lesnak's testimony, but her own deposition testimony belied that claim. For one thing, she testified that Anderson personally shuttled some of the ATF payments, so his testimony clearly could prove that payments were made. For another, she testified that Slibeck knew of the payments—and every other source of her income, as accountants often do—so it seems implausible to say he could not have testified as to whether Carman had a legitimate source of income.

Based on these deficiencies, the magistrate judge and district court concluded that Carman was not entitled to the requested discovery. Carman provides no reasoned argument (other than the same unsupported assertions made below) to persuade us that the decision was an abuse of discretion, let alone one causing "actual"—rather than speculative or hypothetical—prejudice. *Pittman*, 901 F.3d at 642. We affirm the denial of her motion to compel.

*Summary Judgment.* Carman also appeals the district court's grant of summary judgment to the government on her ancillary claims. We review de novo. *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 681 (6th Cir. 2018).

Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To make that showing, "the nonmoving party [must] go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case," an element on which she will bear the burden at trial, the movant is entitled to summary judgment. *Id.* at 323. Although the Federal Rules of Civil Procedure do not apply "in all respects" to ancillary proceedings, *Salti*, 579 F.3d at 662 (citation omitted), motions for summary judgment may be filed, Fed. R. Crim. P. 32.2(c)(1)(B).

At the outset, Carman argues that the district court was required to consider anew whether her claimed property was connected to Maddux's crime—a finding the court first made when entering Maddux's agreed order of forfeiture. That argument, however, "is not [hers] to make" in an ancillary proceeding—"third parties lack statutory standing to challenge a district court's determination, in a preliminary order entered under Criminal Rule 32.2(b)(2), that certain property is subject to forfeiture." *Fabian*, 764 F.3d at 637–38.

Next, Carman asserts a fifty-percent interest in three vehicles, various coins, and twelve financial accounts—all property that was held by either her and Maddux jointly or the corporations

set up to facilitate the conspiracies. Because she has at least a partial ownership interest in these properties, she says, her interest may not be forfeited.[1] Her argument's premise appears correct. Due to "the *in personam* nature of criminal forfeiture," the government is entitled only "to forfeiture of a convicted defendant's interests and nothing more." *United States v. O'Dell*, 247 F.3d 655, 680 (6th Cir. 2001).

But Carman has the burden to prove that the interests she asserts vested in her (rather than Maddux), or that those interests were superior to his, at the time he committed the crime. *See* 21 U.S.C. § 853(n)(6); *Salti*, 579 F.3d at 661. And that often is an intricate question of state law—particularly here, where the claimed property is spread across two states (Kentucky and Arizona), each with different marital-property regimes. *Cf. generally Salti*, 579 F.3d at 669 (directing the district court, on remand, to consider Swiss law when analyzing the claimant's interests in a Swiss bank account jointly held with her defendant-husband); *United States v. Totaro*, 345 F.3d 989, 997–99 (8th Cir. 2003) (collecting cases).

Carman makes absolutely no effort, however, to explain how her partial interests vested in her or were superior to Maddux's interests under the governing state's law—or even which state's law governs. Nor did she do so in her verified petition or briefing below. She is represented by counsel, and we will not consider these issues, which are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014) (citation omitted). Therefore, we affirm the grant of summary judgment as to her claimed partial interests in the vehicles, coins, and financial accounts.

Finally, Carman claims a full ownership interest in the Kentucky home she shared with Maddux, two classic Chevrolet Corvettes, and "[c]ertain items of jewelry" seized from the Arizona

---

[1] She appears to claim only a vested or superior interest in the property under 21 U.S.C. § 853(n)(6)(A), not that she was a bona fide purchaser, *see id.* § 853(n)(6)(B).

home of Maddux's mother. R. 580 at 4851–52. Carman failed to create a genuine issue of material fact as to her ownership interests in this property.

The home and Corvettes belong to the government by virtue of the relation-back clause. *See* 21 U.S.C. § 853(c). Maddux's scheme began in 2003. *United States v. Maddux*, 917 F.3d 437, 441 (6th Cir. 2019). Carman purchased the home in 2008 and the Corvettes in 2005 and 2013, and she admitted to paying for all three using income earned working for Maddux's cigarette business, Your Kentucky Tobacco Resource (YKTR). She therefore used tainted proceeds from Maddux's scheme to purchase this property, and because she acquired the property only after the scheme began, her interest vested in the government under the relation-back clause. *See Erpenbeck*, 682 F.3d at 478; *United States v. Hooper*, 229 F.3d 818, 822 (9th Cir. 2000) (explaining that "[p]roceeds from crime" logically cannot "precede the crime"); *United States v. Timley*, 443 F.3d 615, 628–29 (8th Cir. 2006) (holding that a third party's claim, which vested after the conspiracy ended, did "not give him a legal right to money that was derived from a drug conspiracy that began before that date").

There are two wrinkles to iron out. First, Carman argues that she received an inheritance from her grandmother, "which [Carman] could have used to pay [for] some portion of the" home. Carman Br., p. 18. But the only support Carman cites for that assertion, her deposition transcript below, does little (if anything) to substantiate it. When asked if there were any sources of funds used to purchase the home other than income from YKTR, Carman responded, "It was so long ago. I don't remember what I spent – well, my grandmother gave me, as far as inheritance, and I don't know if I used that for part of it or not. But the majority of it was from my income from YKTR." R. 756-4 at 8981. She cites no other portion of her deposition to verify the inheritance or its amount. Nor did Carman produce her grandmother's will below, despite her testimony that

her mother found a copy of it. Without any evidence to support the alleged inheritance, she has failed to genuinely dispute whether she paid for even a portion of her home with untainted funds.

Second, Carman relies again on her grandparents to claim the jewelry, asserting that "the jewelry seized in this case was given to [her] by" them. Carman Br., p. 19. The only portion of her deposition cited for that claim fails to identify which pieces of jewelry those were—a big problem, because she also testified that she bought "at estate sale[s]" some of the seized jewelry, rather than receiving every piece from her grandparents. R. 756-4 at 9001. That later-acquired jewelry, like her home and Corvettes, vests in the government per the relation-back clause unless she can genuinely dispute that she acquired it prior to 2003 or used untainted funds to purchase it. *See* 21 U.S.C. § 853(c); *Hooper*, 229 F.3d at 822. But she points to no evidence showing that. Nor does she point to any evidence (other than the vague testimony noted above) showing that even *some* of the jewelry came from her grandparents. Without that, no reasonable jury could find for her, so summary judgment was properly granted. *See Anderson*, 477 U.S. at 248.

**IV.**

For these reasons and those set forth in the published opinion, we reverse Maddux's and Carman's money judgments, and we affirm the orders appealed separately by Carman.