RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LAKERSKO BROWN; KATIE BLACKBURN;
MATTHEW MCGOWAN; SHALYN KIKER, as
class representatives; DISABILITY LAW AND
ADVOCACY CENTER OF TENNESSEE,
                    *Plaintiffs-Appellees,*

            *v.*

TENNESSEE DEPARTMENT OF FINANCE AND
ADMINISTRATION; M. D. GOETZ, JR., in his
official capacity as Commissioner of the
Department of Finance and Administration,
                    *Defendants-Appellants.*

> No. 07-6163

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00665—Robert L. Echols, District Judge.

Argued: September 22, 2008

Decided and Filed: March 9, 2009[*]

Before: MARTIN, ROGERS, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael W. Kirk, COOPER & KIRK, Washington, D.C., for Appellants.
Samuel R. Bagenstos, Ann Arbor, Michigan, for Appellees. **ON BRIEF:** Michael W. Kirk,
Charles J. Cooper, COOPER & KIRK, Washington, D.C., Dianne Stamey Dycus, OFFICE
OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants.
Samuel R. Bagenstos, Ann Arbor, Michigan, Martha Michele Lafferty, Sherry Ann Wilds,
DISABILITY LAW & ADVOCACY CENTER OF TENNESSEE, Nashville, Tennessee,
Kent E. Krause, BREWER, KRAUSE, BROOKS, CHASTAIN & BURROW, Nashville,
Tennessee, Martha Jane Perkins, NATIONAL HEALTH LAW PROGRAM, Chapel Hill,
North Carolina, for Appellees.

---

[*]This decision was originally issued as an "unpublished decision" filed on March 9, 2009. On
March 30, 2009, the court designated the opinion as one recommended for full-text publication.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.   The Tennessee Department of Finance appeals the district court's denial of its motion to vacate a settlement between the parties in a suit for Medicaid benefits.   Tennessee argues that the agreed order approving the settlement should be treated as a consent decree and vacated under Federal Rule of Civil Procedure 60(b)(5) because an intervening decision of this Court, *Westside Mothers v. Olszewski*, 454 F.3d 532 (6th Cir. 2006) ("*Westside Mothers II*"), eliminated the legal basis for the settlement and thus made it inequitable to enforce prospectively.   We REVERSE in part and REMAND for further proceedings consistent with this opinion.

I.

This appeal stems from the settlement of a § 1983 suit brought by a class of mentally disabled Tennessee residents.   In the underlying suit, the class members alleged they were eligible for services under the Medicaid Act either in an  Intermediate Care Facility for the Mentally Retarded (ICF/MR) or in a host or group home through Tennessee's "home and community based services" Medicaid waiver program (HCBS),[1]  but had been denied the opportunity to apply for waiver services, had their applications denied, or had been determined to be eligible for services but were put on a waiting list.   In so doing, the plaintiffs argued that Tennessee violated Medicaid law in five ways: (1) by failing to provide medical assistance in "adequate amount, duration, and scope" in violation of 42 U.S.C. § 1396a(a)(10); (2) by failing to provide eligible defendants a choice between ICF/MR and HBCS waiver services in violation of 42 U.S.C. § 1396n(c)(2); (3) by

———

[1] Medicaid is a  federal "grant-in-aid" program that helps states pay for health services for the needy.   Grant-in-aid programs are contractual in nature—that is, states that accept federal Medicaid funding must develop a state Medicaid plan that complies with the terms and conditions upon which the federal funds were offered.   State plans must include certain services, and may include others if the state chooses, but the services offered must meet the requirements of the Medicaid Act unless a waiver of certain requirements is approved by the Federal Center for Medicaid Services in the Department of Health and Human Services (CMS) under 42 U.S.C. § 1396n.   The provisions at issue in this case arise within the "home and community-based services" waiver.   Enrollment in this waiver program is capped at the number of slots proposed by the state and approved by CMS.   42 C.F.R. § 441.303(f)(6); *see generally* State Medicaid Directors Letter No. 01-006 (Jan. 10, 2001), *available at* http://www.cms.hhs.gov/smdl/downloads/smd011001a.pdf.

failing to inform eligible individuals of the application process with reasonable promptness in violation of 42 U.S.C. § 1396a(a)(8); (4) by failing to serve individuals with reasonable promptness in violation of 42 U.S.C. § 1396a(a)(8); and (5) by failing to provide written notices and an opportunity to be heard when services are denied in violation of 42 U.S.C. § 1396a(a)(3) and the due process clause of the Fourteenth Amendment.

Following the district court's denial of cross-motions for summary judgment, the parties negotiated a settlement that was later approved by the district court in an agreed order it issued June 15, 2004. Under this settlement, Tennessee agreed that it would overhaul its administrative system, expand funding and programs for the mentally disabled, and develop program infrastructure with the goal of increasing program enrollment and substantially reducing or eliminating the waiting list for waiver services. The agreement prescribed Tennessee's objectives for the first two years of the agreement, and provided that its goals for years three through five would be negotiated within two years. The agreement would then expire at the end of the fifth year, on December 31, 2009.

After the initial two year period, the parties disagreed as to whether Tennessee had met the goals set for the first two years and they were unable to reach an agreement as to goals for years three through five. The magistrate judge supervising the case thus declared an impasse and referred the matter back to the district court (as provided in the settlement). Tennessee then moved to vacate the agreed order approving the settlement and dismiss the suit based upon an intervening Sixth Circuit decision, *Westside Mothers v. Olszewski*, 454 F.3d 532 (6th Cir. 2006) ("*Westside Mothers II*"). In *Westside Mothers II*, this Court rejected a suit alleging that Michigan had violated the Medicaid Act by failing to ensure the provision of diagnostic services to eligible children because Medicaid is a reimbursement scheme, not a scheme for state-provided medical services. 454 F.3d at 539-41; *cf.* 42 U.S.C. § 1396d(a) ("The term 'medical assistance' means payment of part or all of the cost of [covered] care and services."). In its motion, Tennessee argued that the settlement was intended to remedy its alleged noncompliance

with the Medicaid statute by failing to ensure eligible individuals had access to waiver services, but that *Westside Mothers II* had since established that no such duty exists. This, Tennessee argued, constituted a change in circumstances that entitled it to relief from prospective enforcement of the agreement under the Supreme Court's decision in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), which held that it is inequitable under Rule 60(b)(5) to enforce a consent decree when the violation it intends to remedy has ceased to be illegal due to a change in law. The district court denied this motion, and Tennessee now appeals.

II.

A.

Medicaid requires participating states to provide "medical assistance" to eligible individuals, 42 U.S.C. § 1396a(a), and that it be provided with "reasonable promptness." 42 U.S.C. § 1396a(a)(8). But what "medical assistance" means in this context has been the subject of disagreement in the federal courts. The district courts that initially addressed this issue took the view that "medical assistance" means "medical services," and held that states had a duty to ensure that eligible individuals received medical services with "reasonable promptness." *See, e.g.*, *Sobky v. Smoley*, 855 F. Supp. 1123, 1147 (E.D. Cal. 1994) ("§ 1396a(a)(8) requires 'Medical assistance under the plan' to be furnished with reasonable promptness, and this can only mean medical services.").

The initial courts of appeals to address this issue followed suit without much discussion. *See Doe v. Chiles*, 136 F.3d 709, 715 n.13 (11th Cir. 1998) (following *Sobky*); *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002) (following *Doe*). But in *Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003), the Seventh Circuit offered an alternative interpretation. Observing that "medical assistance" is defined in the statute as "financial assistance," Judge Posner suggested that the state has no duty to ensure that individuals receive services, but only to provide reimbursement for their costs. *Id.* at 910. This distinction, he noted, "was missed in *Bryson v. Shumway* and *Doe v. Chiles*." *Id.*

In *Westside Mothers II*, this Court followed Judge Posner's dicta in *Bruggeman* and rejected a suit by a class of Medicaid-eligible children who argued that Michigan was violating federal law by failing to provide or arrange for the provision of certain screening, diagnostic, and treatment services. 454 F.3d at 540. Observing that the Medicaid Act defined "medical assistance" as "payment of part or all of the cost of . . . care and services," 42 U.S.C. § 1396d(a), we concluded: "The most reasonable interpretation of § 1396a(a)(8) is that all eligible  individuals should have the opportunity to apply for medical assistance, i.e., financial assistance, and that such medical assistance, i.e. financial assistance, shall be provided to the individual with reasonable promptness." *Id.* at 540. Thus, we held that plaintiffs had failed to state a claim under either section 1396a(a)(8) because they sought to compel the state to arrange for the provision of such services or provide them itself.  *Id.*

Most recently, in *Mandy R. v. Owens*, 464 F.3d 1139 (10th Cir. 2006), the Tenth Circuit applied our reasoning in *Westside Mothers II* to a suit brought by a class of eligible individuals seeking services under a Home and Community-Based Services waiver program (the same program as here). Explaining that "medical assistance" is defined as "financial assistance," the *Mandy R.* court held that the state's duty was limited to "pay[ing] promptly and evenhandedly for medical services when presented with the bill." *Id.* at 1143. Thus, the class members failed to state a claim because they were on a waiting list for services, not payment. *Id.* at 1143.

We believe that the Tenth Circuit's application of *Westside Mothers II* in *Mandy R.* accurately states the law of our circuit on a state's obligations to provide "medical assistance" in a waiver program and applies with equal force to this case: absent more, a waiting list for waiver services does not violate federal law because the state's duty is to pay for services, not to ensure they are provided.

B.

Federal Rule of Civil Procedure 60(b)(5) authorizes a court to grant relief from final judgment if "applying it prospectively is no longer equitable." Whether prospective enforcement is no longer equitable under Rule 60(b)(5) is a fact-intensive inquiry within the broad equitable powers of a district court. Accordingly, we review a district court's denial of a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(5) for abuse of discretion. *Ford Motor Co. v. Mustangs Unlimited, Inc*., 487 F.3d 465, 468 (6th Cir. 2007). Under this standard, we defer to the district court's ringside view of the proceedings, including its understanding of the underlying complaint and the meaning and purpose of the settlement, and we will affirm absent "a definite and firm conviction that the trial court committed a clear error of judgment." *Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 132-33 (6th Cir. 1990) (citations omitted).

In *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), the Supreme Court explained that under Rule 60(b)(5), "A party seeking modification of a consent decree may meet its initial burden by showing a significant change either in factual conditions or in law," *id.* at 384, and that consequently, "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree is designed to prevent." *Id.* at 388; *see also Agostini v. Felton* 521 U.S. 203, 238 (1997) ("It is true that the trial court has discretion, but the exercise of discretion cannot be permitted to stand if we find it rests upon a legal principle that can no longer be sustained."). The *Rufo* rule flows from the insight that a consent decree designed to remedy violations of federal law is not a private contract; it is a judicial decree enforcing rights created by federal law through means agreed upon by the parties. So if a change in law eliminates the rights and duties the consent decree is designed to enforce, then it should not be enforced simply because the parties agreed to it. *See Biodiversity v. Cables*, 357 F.3d 1152, 1169-70 (10th Cir. 2004).

The district court in this case misapplied *Rufo*, as it denied Tennessee's motion on the grounds that its obligations under the settlement were contractual and thus unaffected by *Westside Mothers II*:

> In settling the underlying litigation, Defendants willingly accepted a contractual duty to ensure the provision of medical services to persons on the DMRS waiting list to help accomplish the parties' "overriding common interest" in "assuring that Tennessee's citizens with mental retardation are provided reasonable opportunities to grow and develop, exercise independence, and lead full and productive lives in a safe environment." Neither *Rufo*, *Sweeton*, *Westside Mothers II*, nor *Mandy R.* requires the Court to relieve the defendants of the solemn obligations they voluntarily assumed under the Agreement.

As explained above, the fact that Tennessee settled this case is beside the point. What matters under *Rufo* is not that Tennessee agreed to take the actions specified in the settlement, but what those actions were intended to remedy: if the settlement was premised on the understanding that the Medicaid statute imposed upon Tennessee a duty to ensure the provision of medical services, then *Rufo* counsels that we vacate the agreed order because *Westside Mothers II* established that no such duty exists.[2] So the remaining question is whether Tennessee has carried its burden of proof.

C.

There can be little doubt that *Westside Mothers II* represents an important change in law. Prior to *Westside Mothers II*, it was an open question in our circuit whether a state's duty to provide "medical assistance" required it to ensure that all eligible individuals received services, and the weight of authority in other circuits favored such an interpretation. After *Westside Mothers II* and *Mandy R.*, it is clear that no such duty exists. But, even acknowledging the significance of this change in law, we are not convinced that the dramatic relief Tennessee seeks—for us to vacate the settlement in its entirety—is appropriate at this juncture.

---

[2]The district court retained jurisdiction over the settlement agreement "for all purposes" and it is thus the functional equivalent of a consent decree. *See Vanguards of Cleveland v. Cleveland*, 23 F.3d 1013, 1018 (6th Cir. 1994) (observing that an agreed order "places the prestige of the court behind the agreement reached by the parties" and that the prospective provisions of such operate as an injunction).

First, the parties characterize the underlying litigation and goals of the settlement in very different ways, and it is not clear from the sparse record whether *Westside Mothers II* completely undermined the settlement. Tennessee argues that the settlement was intended to eliminate its waiting list for Medicaid services based upon a perceived statutory duty to ensure that services were provided to all eligible individuals. Plaintiffs, however, disavow this characterization of the underlying litigation. Instead, they contend that they were seeking information about the waiver program, access to it, and enrollment in available slots (at least up to the statutory cap) so that they could obtain Medicaid funds.

The record does not conclusively show which party's description of the underlying litigation is correct. Plaintiffs' complaint is pleaded generally and could plausibly be read to support either theory. We have no record of the settlement discussions between the parties or their pre-settlement arguments to the district court. The district court's initial order was brief and denied summary judgment on all five of plaintiffs' claims. And Tennessee's duties under the settlement agreement are not clearly intended to remedy one theory but not the other. As a result, we cannot say with certainty that *Westside Mothers II* had the effect Tennessee contends or warrants the relief it requests. In our view, it is difficult to determine whether this consent decree was undermined to a degree sufficient to justify relief when the basis and meaning of the decree are not clear and the district court has yet to interpret it. As a result, we hesitate to vacate the decree in its entirety at this stage. If plaintiffs' account of the underlying litigation is as revisionist as Tennessee claims, then Tennessee is entitled to full relief from prospective enforcement. But the district court will have to address this matter on remand.

Second, the settlement is about to expire—its five year term runs out at the end of this year, and Tennessee's duties under it will then cease. So, given that only part of the settlement is in clear conflict with *Westside Mothers II*, and that Tennessee's obligations will soon end, we do not believe that equity necessarily requires that we vacate the decree in its entirety now.

Third, Tennessee may be able to obtain relief from enforcement of the settlement during its final nine months even if we do not fully grant it here. Tennessee has two safety valves available to it under the settlement itself. First, the agreement provides that Tennessee's duty to enroll additional individuals into the waiver program is conditioned on both the availability of a waiver slot and funding for that slot. Second, and more significantly, section IX.B.5.d of the settlement agreement provides that if the parties return to court to litigate claims of non-compliance, "[a]fter two years following the approval of this Agreement, defendants may defend any action for non-compliance on the grounds that defendants are in compliance with the federal laws that are the basis of the underlying action which is the subject of this Agreement."[3] Tennessee is currently defending a pending enforcement action on this very ground. If the district court accepts Tennessee's view of the case on remand, Tennessee will avoid all of its obligations under the settlement anyway. Because the district court has yet to rule on this motion or otherwise interpret the provisions of the settlement, we feel it is premature to vacate the settlement in its entirety at this time.

These things considered, we do not believe the district court abused its discretion in refusing to vacate the settlement in its entirety. But it did misapply *Rufo*, and it did abuse its discretion in refusing to modify the agreement at all. At this time, we will modify the decree in two ways. First, we vacate Tennessee's commitment to develop "provider network capacity," which does not appear to remedy any violation of federal law after *Westside Mothers II*. Second, any commitment Tennessee arguably made to eliminate the waiting list for services is likewise unenforceable after *Westside Mothers II*. Absent more, a waiting list for waiver services is not inconsistent with Tennessee's duty to provide "medical assistance" to individuals eligible for its HCBS waiver with "reasonable promptness."[4]

---

[3]Tennessee argues in the alternative that we should vacate the settlement based upon its own terms, but the basis for this appeal is the district court's denial of Tennessee's motion to vacate the agreed order under Rule 60(b)(5), so Tennessee is not "defend[ing] an[] action for noncompliance" and this provision does not apply here.

[4]We acknowledge that enrollment in the waiver program is capped at the number of slots proposed by the state and approved by CMS, and we do not take the plaintiffs to contend that Tennessee has a unlimited duty to enroll eligible individuals in its HCBS waiver. To the extent that is plaintiffs'

On remand, the district court should consider the agreed order in light of its knowledge of the history of this case and our discussion of *Westside Mothers II* and *Mandy R.* to determine whether and to what extent the settlement should be enforced during its final nine months of existence.

### III.

For the foregoing reasons, we REVERSE in part and REMAND for further proceedings.

---

position, we reject it now.  We express no opinion as to whether Tennessee has a duty to enroll eligible individuals up to the waiver-enrollment cap or whether such a duty was contemplated by the settlement agreement at issue in this case.