NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0712n.06

No. 12-6119

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | **FILED** |
| | ) | *Aug 02, 2013* |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| WILLIAM J. GALLION; | ) | STATES DISTRICT COURT FOR |
| SHIRLEY CUNNINGHAM, | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| Defendants, | ) | |
| | ) | |
| JOSEPH C. GALLION, | ) | |
| | ) | |
| Appellant. | ) | |

Before:  GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge.  Petitioner-appellant Joseph Gallion ("Gallion") appeals the district court's denial of his motion to vacate or stay a final order of forfeiture.  Gallion argues that the Government's attempt to provide notice of the forfeiture proceedings did not meet statutory requirements or the constitutional standard of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The district court found that the Government's efforts were sufficient and determined that Gallion's claim could not succeed in any case because he had actual notice of the forfeiture proceedings.  On appeal, Gallion contests the findings of the district court on notice and for the first time raises a jurisdictional argument.  For the following reasons, we **AFFIRM** the order of the district court.

## I. BACKGROUND

Joseph Gallion is the son of attorney William Gallion. William Gallion, along with his partner Shirley Cunningham, was convicted of wire fraud after defrauding clients of tens of millions of dollars. *See United States v. Cunningham*, 679 F.3d 355, 362–71 (6th Cir. 2012). The fraud conviction stemmed from a $200-million-dollar settlement that the attorneys negotiated on behalf of 431 clients who had been injured by the diet drug known as "fen-phen." *Id.* at 362–64. The Kentucky Bar Association began an investigation of the settlement in January 2002 and the two attorneys were eventually disbarred and then convicted in federal court. *Id.* at 366.

Following the conviction, the district court granted a preliminary order of forfeiture requiring the defendants to pay $30 million to the Government. The order specified various properties to be forfeited to satisfy the judgment, but granted a stay of the forfeiture as to the substitute assets included in the order.[1] The preliminary order was amended on July 24, 2009, to include as substitute assets two properties related to Joseph Gallion—a house located at 614 E. Cambridge Lane and an adjacent vacant lot at 602 E. Cambridge Lane, both in the city of Nicholasville, Kentucky.

On August 18, 2009, the district court entered judgment against the defendants, sentencing William Gallion to a total term of 25 years of imprisonment and ordering that William Gallion and Shirley Cunningham pay $127 million in restitution to their clients. The judgment also incorporated the amended preliminary forfeiture order that listed the properties related to Joseph Gallion.

---

[1]"Substitute assets, as defined by 21 U.S.C. § 853(p), are not directly traceable to the underlying offenses for which [the criminal defendant] was indicted, but could be used to satisfy a judgment under certain circumstances (detailed in the statute)," *United States v. Parrett*, 530 F.3d 422, 424 (6th Cir. 2008), including where the property "has been transferred or sold to, or deposited with, a third party[.]" 21 U.S.C. § 853(p)(1)(B).

After the defendants appealed, the Government provided notice to third parties that might have an interest in the specified properties. According to the Government, it ultimately sent notice by certified mail to eighteen potential claimants, including Joseph Gallion, advising them of the process required to file a petition to request an ancillary hearing to contest the forfeiture. The Government states that it sent the notice directly to the attorneys of potential claimants where it was aware that a claimant was represented by an attorney—for example, it sent notice to attorney Stephen O'Brien who had requested to be notified on behalf of William Gallion's girlfriend, Melissa Green. The Government then posted notice of the forfeiture on an official government website for thirty consecutive days beginning on June 10, 2010.

Joseph Gallion was the record owner of the house at 614 E. Cambridge Lane ("the house") and he was the sole registered agent of an entity called WJG Holdings, LLC ("WJG"), which owned the lot next door at 602 E. Cambridge Lane ("the lot"). In the initial motion to amend the preliminary-forfeiture order, the Government acknowledged that the house was held in Joseph Gallion's name, but contended that evidence existed to prove that Joseph Gallion was "merely a nominee owner" and that William Gallion had purchased and was the true owner of the property. The Government sent notice via certified mail to Joseph Gallion as the registered agent of WJG at the address on file with the Kentucky Secretary of State, but the notice was returned as undeliverable. It also sent notice to an attorney, Michael Dowling, who had represented William Gallion during the criminal trial, and who—according to the Government brief—had called the prosecutors and advised them that he represented Joseph Gallion in the forfeiture proceedings. Joseph Gallion, however, never filed a petition as to the house, and WJG never filed a petition as to the lot.

Six other individuals and entities did file petitions, all of which were either settled or ultimately denied in a September 10, 2010 memorandum and order. For example, Patricia Cunningham, who married Shirley Cunningham in 2004, filed a petition claiming that she had superior title to eight different properties that had been specified in the preliminary forfeiture order. After a May 24, 2010 ancillary hearing, the district court granted the government's motion to dismiss the petition. The court found that Shirley Cunningham had "used his resources (including fees taken from his former clients/victims) for the various purchases that followed the 2001 settlement." Sept. 10, 2010 Order at 24, R. 128 at PageID# 23225. Among other reasons for denying the petition, the district court held that the "relation-back doctrine" of *United States v. Stowell*, 133 U.S. 1, 16–17 (1890), applied to the forfeiture of substitute assets. Sept. 10, 2010 Order at 25 (citing *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003)). Because Ms. Cunningham's interest in the properties had not vested prior to the commission of the acts giving rise to the forfeiture, the court determined that her interest had not vested prior to the date the government had acquired *its* interest in the property. Therefore her claim could not succeed.

The final sequence of events forms the basis of Joseph Gallion's jurisdictional argument: On May 1, 2012, a Sixth Circuit panel affirmed the sentence and judgment of the district court as to William Gallion and Shirley Cunningham. The two defendants were granted an extension of time to file a motion for rehearing en banc, which they eventually filed on May 30. On June 27, the request for rehearing in the criminal appeal was denied. The mandate was not issued until July 6.[2]

---

[2]"The mandate is the document by which this Court relinquishes jurisdiction and authorizes the originating district court or agency to enforce the judgment of this Court." *United States v. Campbell*, 168 F.3d 263, 267 (6th Cir. 1999) (quoting Sixth Circuit Internal Operating Procedure 41). "The mandate issues 21 days after the entry of judgment and consists of a certified copy of the original judgment, a copy of any opinion and any directions concerning costs." *Id.*

Before the mandate issued, however, the Government moved in the *district court* for a "Final Decree and Order of Forfeiture" ("Final Order") for all of the property for which no petition had been filed and successfully settled by third parties. The motion included the properties at 602 and 614 E. Cambridge Lane. On June 18, still some three weeks before the mandate issued from the Sixth Circuit, the district court granted this Final Order. On June 27, the same day that the request for rehearing in the criminal appeal was denied, the United States Marshals seized the house at 614 E. Cambridge Lane and evicted Joseph Gallion. That day, the defendants in the criminal appeal, William Gallion and Shirley Cunningham, filed an ultimately unsuccessful motion for withdrawal of the Final Order, arguing that the district court should not have lifted the stay on the forfeiture until the motion for rehearing en banc had been decided.

Several weeks after the mandate issued, Joseph Gallion filed the motion that forms the basis of the appeal we now consider. He denominated the motion as a "Motion to Vacate and/or Stay" the final order of forfeiture as to the house at 614 E. Cambridge Lane, and he requested a delayed ancillary proceeding to contest the forfeiture and permission to occupy the house until any appeals were exhausted in the matter. He argued that the Government had failed to give him the notice of the forfeiture proceedings required under the Constitution, the forfeiture statutes, and the Federal Rules of Criminal Procedure. The district court eventually denied the motion, agreeing with the Government that it had provided Gallion with sufficient notice. Gallion appealed, and it appears that the Government has agreed to allow him to continue to live in the house until the instant appeal has concluded.

## II. STANDARD OF REVIEW

The parties in this case have belatedly determined that the proper method of moving to re-open a forfeiture judgment for lack of notice is by filing a 60(b) motion under the Federal Rules of Civil Procedure. *See* Fed. R. Crim. P. 32.2(a) advisory committee's note (2000). In the proceedings below, neither party advised the district court that Gallion's motion should be treated as a 60(b) motion. In their appellate briefing, however, the parties have framed the issue as whether relief is appropriate under Rule 60(b). We will therefore treat the district court's order as a Rule 60(b) denial of relief.

Rule 60(b) provides, in pertinent part, that:

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason that justifies relief.

Where a defendant argues that he or she should be granted relief on the basis of excusable neglect, the district court must also consider "three equitable factors": "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Burrell v. Henderson*, 434 F.3d 826, 831–32 (6th Cir. 2006). "A motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

We review a district court's denial of a Rule 60(b) motion under an "abuse of discretion" standard. *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996). "Under this standard, we defer to the district court's ringside view of the proceedings," *Brown v. Tennessee Dep't of Fin. & Admin.*, 561 F.3d 542, 545 (6th Cir. 2009), and we will reverse only upon the "definite and firm conviction that the trial court committed a clear error of judgment," *Davis by*

*Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (internal quotation marks omitted).

The district court's findings of fact are reviewed under a "clearly erroneous standard" and "the question of whether those facts are sufficient to constitute a proper criminal forfeiture is reviewed de novo." *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001).

### III. LEGAL STANDARD

#### A. Criminal forfeiture procedure

"To obtain title to property through criminal forfeiture, the government must give third parties a chance to assert competing interests in the property." *United States v. Erpenbeck*, 682 F.3d 472, 475 (6th Cir. 2012). To do so, 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2 prescribe a two-track criminal-forfeiture procedure.

As soon as possible after a verdict or a guilty plea, a district must enter a "preliminary order of forfeiture," which sets forth the amount of any money forfeiture and lists any specific property to be forfeited. Fed. R. Crim. P. 32.2(b). That preliminary order becomes final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents[.]" Fed. R. Crim. P. 32.2(b)(4)(A). If the defendant appeals either the conviction or the forfeiture order, "the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2(d).

The preliminary order is entered "without regard to any third party's interest in the property," Fed. R. Crim. P. 32.2(b)(2)(A), and the district court considers whether third parties may have superior interest in the property using separate "ancillary proceedings." After the preliminary order is entered, § 853(n) requires the government to provide notice of the proceedings to third parties,

giving them thirty days to file a petition asserting their claims. 21 U.S.C. § 853(n)(1)–(2); 18 U.S.C. § 1963(l)(2). "If anyone files a petition, the court must hold an ancillary hearing to determine the bona fides of his alleged interest." *Erpenbeck*, 682 F.3d at 475 (citing § 853(n)(2)). "If no one files a petition within the statutory time frame, 'clear title' vests in the United States, extinguishing all other parties' interests in the property." *Id.* (quoting 21 U.S.C. § 853(n)(7)).

If a third party does file a petition for an ancillary proceeding, the court may dismiss the petition for lack of standing or for failure to state a claim; may allow discovery; and may consider motions for summary judgment. Fed. R. Crim. P. 32.2(c). After the ancillary proceedings end, the court enters a final order of forfeiture ("Final Order") that accounts for any third-party rights. Fed. R. Crim. P. 32.2(c)(2).

**B. Notice Standard**

This court recently clarified the constitutional-notice standard that governs the rights of third parties in the forfeiture process. *See Erpenbeck*, 682 F.3d at 476. "Due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of' a legal action that will determine their rights to property, and to 'afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Under this "reasonably calculated" standard, the government must "attempt to provide *direct* notice of the proceeding" to individuals or entities that "the government knows or reasonably should know" are interested parties. *Id.* (emphasis added).

Various federal rules governing the forfeiture process codify the standard. Under the Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule") G(4)(b)(iii)(A), notice to third parties "must be sent by means reasonably calculated to reach

8

the potential claimant." And Fed. R. Crim. P. 32.2(b)(6)(A) requires that where "the court orders the forfeiture of specific property, the government must publish notice of the order *and send notice* to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." The notice "must describe the forfeited property, state the times under the applicable statute when a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition." Fed. R. Crim. P. 32.2(b)(6)(B).

Finally, while the government must attempt to provide direct notice, "[a] potential claimant who had *actual notice* of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supplemental Rule G(4)(b)(v) (emphasis added); *Erpenbeck,* 682 F.3d at 476 (citing *United States v. Puig*, 419 F.3d 700, 703–04 (8th Cir. 2005)); *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice.").

## IV. DISCUSSION

### A. Jurisdiction

Gallion argues that the district court lacked jurisdiction when it entered the Final Order because, at that time, the mandate had not yet issued in the appeal of the underlying criminal case. His argument rests on the general rule that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Taylor v. KeyCorp*, 680 F.3d 609, 616 (6th Cir. 2012) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). Under this rule, "the filing of a timely

and sufficient notice of appeal transfers jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal . . . until the district court receives the mandate of the court of appeals." *United States v. Krzyske*, 857 F.2d 1089, 1093 (6th Cir. 1988)).

The Government responds with a reference to Fed. R. Crim. P. 32.2. Rule 32.2 explicitly provides for a district court's jurisdiction over ancillary third-party proceedings during the pendency of an appeal:

> (d) Stay Pending Appeal. If a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review. A stay does not delay the ancillary proceeding or the determination of a third party's rights or interests. *If the court rules in favor of any third party while an appeal is pending*, the court may amend the order of forfeiture but must not transfer any property interest to a third party until the decision on appeal becomes final, unless the defendant consents in writing or on the record.

Fed. R. Crim. P. 32.2(d) (emphasis added).

> The advisory committee notes to Rule 32.2(d) provide further guidance:

> Subdivision (d) makes clear . . . that a district court is not divested of jurisdiction over an ancillary proceeding even if the defendant appeals his or her conviction. *This allows the court to proceed with the resolution of third party claims even as the appellate court considers the appeal.* Otherwise, third parties would have to await the conclusion of the appellate process even to begin to have their claims heard.

Fed. R. Crim. P. 32.2(d) advisory committee's note (2000) (emphasis added); *see also United States v. Christunas*, 126 F.3d 765, 768 (6th Cir. 1997) (holding, prior to the adoption of Rule 32.2 in 2000, that a district court may retain "limited authority to decide matters not inconsistent with the pendency of the appeal, i.e., third party claims").

Rule 32.2(d)'s provision for continued jurisdiction over ancillary proceedings is consistent with the concept that "a timely notice of appeal . . . does not divest a district court of jurisdiction

10

over matters collateral to the main cause of action." *AAA Venetian Blind Sales, Inc. v. Beaulieu of Am., Inc.*, 124 F.3d 196 (6th Cir. 1997) (unpublished table decision) (holding that a district court may proceed in determining and awarding attorney fees after the notice of appeal has been filed); *see Griggs*, 459 U.S. at 58. In the context of a criminal forfeiture, a third-party claim on a defendant's forfeited assets is not an "aspect[] of the case involved in the appeal." *Griggs*, 459 U.S. at 58. Rule 32.2(c)(4) states as much when it notes that the ancillary proceeding in which the district court would resolve a third party's petition is "not part of sentencing." Accordingly, a district court need not wait for the mandate to issue before addressing third-party claims through such a proceeding.

Gallion protests that we should distinguish the Final Order from the ancillary proceedings that precede it. The ancillary proceedings relate to the question of third-party ownership of assets, and therefore they may be collateral. But the Final Order itself, he argues, is tied directly to the issue of the forfeitability of the *defendant*'s assets in the *defendant*'s pending appeal, which suggests that the district court must regain jurisdiction over the defendant and the core issues of conviction and sentence before it can enter the Final Order.

We are unconvinced. A Final Order, as was ultimately entered in this case, decides only the claims of third parties—not defendants. According to Rule 32.2, the district court's preliminary forfeiture order becomes final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." Fed. R. Crim. P. 32.2(b)(4)(A). Thus, at sentencing, "[a] preliminary forfeiture order terminates all issues presented by the defendant and leaves nothing to be done except to enforce by execution what has been determined." *Christunas*, 126 F.3d at 768. In fact, a separate Final Order becomes necessary only if a third party files a petition asserting an interest in the property. *See* Fed. R. Crim. P. 32.2(c)(2) ("If no third party files a timely petition, the preliminary

11

order becomes the final order of forfeiture . . . ."). As a result, a defendant wishing to appeal a forfeiture must appeal the original preliminary order as entered in the judgment, and cannot appeal the later-issued Final Order. *Christunas*, 126 F.3d at 768–69.

Thus, Gallion errs in asserting that the Final Order is "tied directly" to the issue of forfeitability of the defendant's assets. It is not. The continuing validity of the Final Order as to the third parties *does* depend on affirmance of the preliminary order as to the defendant. But the test of whether an issue is collateral to a claim on appeal, and therefore whether a district court may retain jurisdiction, runs in the other direction: it considers whether the action by the district court would "alter the status of the case as it rests before the Court of Appeals." *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) (internal quotation marks omitted). Gallion has not explained how the entry of the Final Order in this case—which determines only *his* rights (and other third parties' rights) to the forfeited property—could or would alter the status of his father's criminal appeal. It follows that the district court had jurisdiction to enter the Final Order prior to the issuance of the mandate.

The First Circuit reached the same conclusion under similar circumstances in *United States v. Hurley*, 63 F.3d 1, 23-24 (1st Cir.1995). In that case, the court considered whether a notice of appeal divested the district court of jurisdiction over a motion for substitution of assets:

> Under these circumstances, we see no reason why the taking of the appeal should divest the district court of authority to enter an order forfeiting substitute property. Appellants do not provide any reason to think that this would interfere with, or contradict, the court of appeals' consideration of the original judgment of a conviction and sentence, including the initial forfeiture order. Avoiding such interference and inconsistency is the purpose of the general rule barring district court proceedings during the pendency of an appeal. There is no reason to extend this ban further than its own rationale.

12

> Of course, the substitute assets order, if one is eventually made, may give rise to new issues for appeal, but a new appeal can be taken directly from this order. Similarly, a decision of the appeals court on the original conviction could undermine the substitute assets order (e.g., by overturning the conviction itself or the initial forfeiture), but a substitute assets order can then be undone or overturned. After all, determination of counsel fees in a section 1983 case presents the same problem and is resolved in precisely this manner.

*Hurley*, 63 F.3d at 23–24 (internal citations omitted). Here, as in *Hurley*, the Final Order may give rise to new issues of appeal, but Gallion can take—and has taken—an appeal directly from the order. *Id.* at 24. And it is true that a reversal of the district court's judgment in his father's criminal appeal could have undermined the Final Order; but if that had happened, the Final Order could have been subsequently "overturned or undone" to reflect the new status quo. *Id.*

Gallion raises the specter of duplicative litigation, contending that a finding of jurisdiction in cases like this would put a third party in the position of pursuing a costly and unripe appeal to block an eviction. This may be true, but it is for just this reason that the criminal-forfeiture statute authorizes district courts to "restrain or stay the sale or disposition of the property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the [third party] demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm, or loss to him." 21 U.S.C. § 853(h).

Moreover, the language of § 853(h) itself clarifies that the district court "has the authority to decide whether to allow the government to dispose of forfeited property pending an appeal." *United States v. Messino*, 907 F. Supp. 1231, 1233 (N.D. Ill. 1995). If the district court has the discretion to stay the sale of forfeited property, presumably it also has the discretion to *allow* the sale of the property. "The logical corollary is that the district court retains jurisdiction over forfeiture matters while an appeal is pending." *Id.* While the better practice here may have been for the district

13

court to wait a few weeks to enter the Final Order—a prudent delay so as to avoid the possibility that the Final Order would later have to be amended—we conclude that the court had jurisdiction to act when it did.

## B. Sufficiency of notice

Gallion's argument as to the sufficiency of the notice also fails, but barely. There is no question that the Government could have avoided this litigation through basic attention to detail in its service of notice to Gallion. And, even after the original oversight, the Government could have presented a far stronger case through the simple act of attaching an affidavit in support of the factual allegations in its brief. Instead, an enormous amount of time and money have been wasted, and the fraud victims have been forced to contend with further delay in the determination of assets available for restitution. Notwithstanding this exasperating sequence of events, we ultimately conclude that the district court did not abuse its discretion in denying relief on the (unnecessarily) close questions of law now presented.

In the order below, the district court agreed with the Government that the notice to attorney Michael Dowling was "reasonably calculated" to apprise Gallion of the forfeiture proceedings and therefore satisfied the various applicable statutory- and constitutional-notice standards. In addition, the court made a factual finding that Gallion had received *actual* notice of the forfeiture proceedings and therefore could not contest the reasonableness of the Government's efforts. Gallion argues that the court improperly interpreted the evidence to arrive at the "reasonably calculated" conclusion and applied the wrong "actual notice" standard. He then argues that the lack of notice renders his failure to file a timely third-party petition "excusable" for the purpose of Fed. R. Civ. P. 60(b), citing *United*

14

*States v. Estevez*, 845 F.2d 1409, 1412 (7th Cir. 1988) (finding, in a case where notice had been insufficient, that the failure to file a timely response "plainly was excusable").

The Government contends that it gave Gallion sufficient notice of the forfeiture proceedings in early 2009 by sending notice via certified mail to Dowling, who had previously appeared on behalf of William Gallion during the criminal trial. The Government's brief stated that Dowling had "contacted the undersigned on multiple occasions inquiring about the forfeiture process;" had "specifically referenced [Joseph Gallion], his house, and advised of his representation;" had "made it well known to the undersigned that he had a close relationship with the Gallion family;" and had "specifically asked to be noticed." R. 1343 at PageID# 24310. The Government also stated that it had sent notice directly to Joseph Gallion in his role as registered agent for WJG Holdings. That notice, however, was not sent to Gallion's home at 614 E. Cambridge Lane, but to the address listed for him as corporate agent at the Kentucky Secretary of State's Office, and was returned as not deliverable.

Gallion argues the Government cannot rely on notice to Dowling because the Government did not include an affidavit about Dowling's alleged phone calls to the prosecuting attorney and therefore no evidence exists to support the allegation that Dowling represented Joseph Gallion. And in any case, Gallion argues, Dowling's response to service of the forfeiture notice should have disabused the Government of its belief about the representation. On the acknowledgement-of-receipt-of-notice form that Dowling signed and returned on March 23, 2010, Dowling wrote: "At this time I do not represent any entity." Dowling had written that statement in the space allocated on the form for "Relationship to Entity / Authority to Receive Service of Process." The Government contends that the statement was not inconsistent with Dowling's telephone statements to the

15

prosecutors because "entity" does not mean "individual," so Dowling's statement could not have meant that he did not represent Joseph Gallion.

Though it is a close question, we agree with the district court that the Government's efforts in this case were "reasonably calculated, under all the circumstances," *Mullane*, 339 U.S. at 314, to apprise Joseph Gallion of the forfeiture proceeding. We agree with Gallion that our decision in *Erpenbeck* required the Government to undertake some effort to notify him *directly* of the forfeiture proceedings. *Erpenbeck,* 682 F.3d at 476. Publication, alone, would not have been sufficient here, where the Government knew that a specific person—Joseph Gallion—was an interested party. *Id.* (citing *Mullane*, 339 U.S. at 318–19). We note, however, that pursuant to *Mullane*, the Government *did* attempt to serve Joseph Gallion with notice directly by mailing the notice to him at the address he had provided to the Kentucky Secretary of State as registered agent of WJG Holdings.

Because the first mailing was returned as undeliverable, however, the Government was required to take "additional reasonable steps to notify [Gallion], if practicable to do so." *Jones v. Flowers*, 547 U.S. 220, 234 (2006). The question in such a situation is "whether there were any such available steps." *Id.* "[I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.*

The Government here did not simply sit on its hands. In addition to attempting direct service on Gallion, the Government also attempted service on Dowling, who it reasonably believed to be Gallion's attorney. If Dowling had been representing Joseph Gallion in the forfeiture proceeding, there is little question the notice would have been sufficient. *See* Supplemental Rule G(4)(b)(v) ("Notice may be sent to the potential claimant *or to the attorney representing the potential claimant with respect to the seizure of property* . . ." (emphasis added)); *Commissioner v. Stewart*, 186 F.2d

16

239, 242 (6th Cir. 1951) (finding service on attorney is sufficient to show actual notice and therefore obviate a lack-of-notice claim).

But even if Dowling did not represent Joseph Gallion at the time, the unique facts of this case suffice to conclude that the Government met its duty under *Jones* by serving Dowling as well as attempting the direct service on Gallion. As an initial matter, we agree with the Government and the district court that Dowling's note—"At this time I do not represent any entity"—was cryptic and does not require the finding that Gallion proposes—i.e., that Dowling "by law" notified the Government that he could not accept service on behalf of Joseph Gallion. Furthermore, in addition to the Government's unsupported statements in its brief,[3] there is evidence in the record that would support the inference that service on Dowling would be reasonably calculated to reach Joseph Gallion. Dowling testified during William Gallion's bond hearing and later wrote a letter to the court about the bond decision, stating that he was a personal friend of the defendants. And while in that letter Dowling also offered to personally pledge all his assets for bond, it was Joseph Gallion who a month later committed his ownership of the house at 614 E. Cambridge as surety. Dowling then represented William Gallion during portions of the criminal trial. *See, e.g.,* R. 827 (noting the charge of contempt of court against Dowling for improper contact with a witness). Given that Dowling was a "personal friend" and attorney of Gallion's father, in a case where Gallion had been directly involved from the beginning, it was not error for the district court to find—under all of the circumstances—that the Government's actions were a reasonable attempt to provide notice. Moreover, we note that while the Government has offered facts on which inferences can be based,

---

[3]Generally, "arguments in a Government brief, unsupported by documentary evidence, are not evidence." *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007).

17

Gallion has offered no evidence at all to explain why Dowling would *not* have communicated the notice to him, nor does he expressly deny that Dowling actually did.

For similar reasons, though it is also a close question, we cannot reverse the district court's finding of *actual* notice. This holding is a finding of fact, to which we apply a "clearly erroneous" standard of review. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)*; Patmon & Young Prof'l Corp. v. C.I.R.*, 55 F.3d 216, 217 (6th Cir. 1995). The standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573. And the standard attaches not just to credibility determinations, but also to factual findings based on physical or documentary evidence "or inferences from other facts." *Id.* at 574.

Gallion argues that the district court erred in finding that Gallion's alleged actual notice of the forfeiture proceedings was sufficient to provide the Government with an affirmative defense to the charge of insufficient notice. He argues that the actual notice required is notice that would allow him to successfully request an ancillary proceeding, which is notice that the "clock was ticking" on the 30-day period within which to file a petition. *Erpenbeck*, 682 F.3d at 475. Gallion is correct in his argument that "actual notice," under these circumstances, must be notice that would be sufficient to apprise the third party of the specific information necessary to *timely* contest the forfeiture. A court could not find "actual notice" of the forfeiture proceedings by determining that a third party found out about the forfeiture proceeding at a time when it was too late to do anything about it.

Still, applying this proper definition of actual notice, we cannot hold the district court's determination to be clearly erroneous. Under 18 U.S.C. § 1963(l)(2), the response period for third-party petitions begins to run "within thirty days of the final publication of notice or his receipt of

18

notice . . . , whichever is earlier." The Government posted notice of the forfeiture on an official government website for thirty consecutive days beginning on June 10, 2010, which means that—barring actual notice—on August 9, 2010, Gallion's opportunity to file his petition would have been extinguished. Unsupported statements in the Government's brief aside,[4] the facts on which the district court based its actual-notice finding would have left Gallion more than adequate time to submit a petition. For example, the district court's finding of actual notice is based, at least in part, on the inference that Dowling would have passed—and did in fact pass—the notice along to Gallion. Dowling signed the receipt-of-notice form on March 23, 2010. In light of all the circumstances in this case, we cannot find clearly erroneous the inference that Dowling would have provided the notice to Gallion within four and half months of having received it.

The district court also supports its finding based on the petition by Melissa Green, William Gallion's girlfriend—the timing of which is instructive. The Government served Green in the same manner as Joseph Gallion, serving notice on the attorney who called and requested to be served on her behalf. According to Green's petition, which is in the record in this case, Green was served "through her Counsel" on March 11, 2010. On April 6, 2010, Green filed the petition in which she asserted, among other interests, an interest in multiple properties in Nicholasville. She lived in one of the properties, which was owned by WJG Holdings—the same company for which Joseph Gallion

---

[4]The Government's brief stated that Joseph Gallion had "contacted the undersigned (Assistant United States Attorney Wade Napier)" on June 27, 2012 regarding the seizure of the house and during the call had "acknowledged that he had known all along that the house was listed in the forfeiture order;" "stated that he was calling from Melissa Green's residence and was aware at the time when she and other third parties filed claims;" and "stated that upon entry of the preliminary order of forfeiture naming the house, he consulted with an attorney regarding the forfeiture process." R. 1343 at PageID# 24314.

19

was the registered agent. An ancillary hearing was held for Green's claim, as well as other related claims, on May 24, 2010. The petition was ultimately denied on September 10, 2010.

Under the unique facts of this case, the inference that Joseph Gallion *must* have learned of the forfeiture proceeding from Dowling, Green, his father, or his father's attorneys is at the very least plausible. *See Anderson*, 470 U.S. at 573–74 ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."). We therefore affirm the finding of actual notice.

Finally, because Gallion has argued that lack of notice requires relief under Rule 60(b), we pause briefly to address why he is incorrect on this point. It is true that lack of notice may render the failure to timely contest excusable. *See Estevez*, 845 F.2d at 1412. But to grant relief on the basis of excusable neglect, a court is required to consider equitable factors, including "whether the defendant has a meritorious defense," *Burrell*, 434 F.3d at 831–32, and whether the motion was "made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

The equitable considerations undergirding relief in a Rule 60(b) request do not favor granting relief in this case. *Estevez*, which Gallion cites for the proposition that lack of notice renders a default excusable, does not support such a finding for Gallion. In *Estevez*, the Government had conceded a key equitable factor—the presentation of a meritorious defense. *Estevez*, 845 F.2d at 1411. The Government has not conceded anything in this case, and Gallion's presentation of his meritorious defense is so thin as to be nonexistent. Gallion simply states that he is the owner and occupant of the property. He fails to address the merits issues that he would face at an ancillary hearing—such as whether there is any argument that the relation-back rule does not apply to

20

substitute assets, or whether his ownership of the property vested prior to the fraudulent acts at issue (which it almost assuredly did not). And in *Estevez*, unlike here, the petitioner acted promptly once notified of the pending forfeiture. The two-year delay before Gallion filed the motion to vacate does not suggest vigilance. *See Di Vito v. Fid. & Deposit Co. of Md.*, 361 F.2d 936, 939 (7th Cir. 1966) ("[T]he relief provided by Rule 60(b) is equitable in character and to be administered upon equitable principles . . . [a]nd, equity aids the vigilant." (citation omitted)).

Though the equities do not lend support to Gallion's argument that a Rule 60(b) claim should have been granted, we note that the district court did not rule on these questions below. But because the district court did not err in finding that the notice was sufficient, there is no need to undertake a fuller analysis of these issues or to remand for further consideration of them.

## V. CONCLUSION

For the above reasons, we cannot find that the district court abused its discretion in denying relief on the motion. We therefore **AFFIRM** the order of the district court.

21